UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: DAVID C. MARCHESE<br>Debtor | : CHAPTER 7<br>: CASE NO. 16-13810-ELF |
| DAVID C. MARCHESE<br>3 Embassy Circle<br>Norristown, PA 19403<br>    Plaintiff<br>    v.<br>JAMES MCCAULEY t/a MCCAULEY<br>ASSOCIATES LIMITED PARTNERSHIP<br>1 Center Avenue<br>Collegeville, PA 19426<br>    and<br>GERALD MULLANEY<br>3881 Skippack Pike<br>Skippack, PA 19474<br>    and<br>HOPWOOD FARM, LLC<br>3881 Skippack Pike<br>Skippack, PA 19473<br>    Defendants | : ADVERSARY NO: 17-00189-elf |

**COMPLAINT TO AVOID AND RECOVER
TRANSFERS PURSUANT TO 11 U.S.C. §§542, 544, 547, 548, and 550**

The Chapter 7 United States Trustee, Gary Seitz, through his undersigned counsel, files the within Complaint, and in support thereof, avers as follows:

**I.    PARTIES AND JURISDICTION**

1.    Plaintiff is Gary Seitz, Chapter 7 United States Trustee. Plaintiff was appointed as Trustee of the above estate and is duly qualified and presently acting as Trustee.

2.    The Defendant is James McCauley, individually and t/a McCauley Associates Limited Partnership ("McCauley"). McCauley is an adult individual with an

1

address at 1 Center Avenue, Collegeville, PA 19462.

3. Upon information and belief, McCauley is the general partner of McCauley Associates Limited Partnership, an entity that is believed to be a Pennsylvania limited partnership with an address at One Center Avenue, Collegeville, PA 19462.

3. The Defendant is Gerald Mullaney, an adult individual with an address at 3881 Skippack Pike, Skippack, PA 19474. Mr. Mullaney is a member of the Bar of the Commonwealth of Pennsylvania.

4. Nominal defendant is Hopwood Farm, LLC, a Pennsylvania Limited Liability Company with an address at 3881 Skippack Pike, Skippack, PA 19474 ("Hopwood").

5. At all times material hereto, Gerald Mullaney was the managing member of Hopwood.

6. The Bankruptcy Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §1334.

7. This Adversary Proceeding is a "core" proceeding pursuant to 28 U.S.C. § 157(b).

6. Venue of this Adversary Proceeding in this Court is proper pursuant to 28 U.S.C. § 1409(a).

**II.    BACKGROUND**

    **A.    <u>FORMATION OF HOPWOOD FARMS</u>**

7. On or about October 27, 2005, a Certificate of Formation was filed with the Pennsylvania Department of State for the formation of Hopwood. The registered address of Hopwood was 3881 Skippack Pike, Skippack, PA, 19474, which is the law

2

firm address of attorneys Gerald Mullaney and his brother Martin Mullaney (collectively, the "Mullaneys").

8. On or about November 18, 2005, the Mullaneys, along with McCauley, Paul Newlin ("Newlin") and the debtor, David Marchese ("Marchese") executed a Limited Liability Operating Agreement for the operation of Hopwood. See **Exhibit "A"**.

9. According to the Operating Agreement, Marchese had a 50% interest in Hopwood, McCauley 12.5%, the Mullaneys 25%, and Newlin 12.5%.

10. The business purpose of Hopwood was to acquire property at 172 Hopwood Road for the principal purpose of subdividing and developing the property into 12 single-family homes ("Hopwood Property").

11. After execution of the Operating Agreement, on or about December 15, 2005, Gerald Mullaney executed a Note and Mortgage as Managing Member of Hopwood in the principal amount of $1,235,000 in favor of Harleysville National Bank (the "Harleysville Loan"), in order to secure financing for the purchase of the Hopwood Property. See **Exhibit "B"**.

12. Upon information and belief, the Mullaneys each executed personal guarantees for the Harleysville Loan.

13. Hopwood purchased the Hopwood Property from the Hopwood Farm Family Trust for $1,900,000.

14. According to the 2007 Form K-1 for Hopwood, Marchese contributed $691,000 as an initial capital contribution, and McCauley contributed $182,895.65. No other member of Hopwood made any capital contributions. See **Exhibit "C"**.

15. Upon information and belief, Marchese made all of the mortgage

payments on the Harleysville Loan.

16.     Marchese also paid all of the engineering and related costs for developing the Hopwood Property.

B.     **THE ORPHANS' COURT LITIGATION**

17.     As early as 2010, Marchese was embroiled in litigation in the Orphans' Court Division of the Court of Common Pleas of Montgomery County brought by the Estate of Joseph C. Marchese, Deceased, O.C. No. 1998-X3148, against the Estate of Joseph D. Marchese, Deceased, O.C. No. 2004-X3559, the latter of which Marchese was appointed personal representative.

18.     On March 21, 2012, the Hon. Lois E. Murphy of the Orphans' Court entered an Order (the "March 2012 Order") in favor of the Estate of Joseph C. Marchese and against the Estate of Joseph D. Marchese, and determined that $1,412,935 had wrongfully been diverted by the Estate of Joseph D. Marchese from the beneficiaries of the Joseph C. Marchese estate (the "Diverted Accounts").

19.     Judge Murphy's Order required Marchese personally to return the Diverted Accounts to the Estate of Joseph C. Marchese.

20.     The March 2012 Order was appealed by Marchese to the Pennsylvania Superior Court. By Order dated June 24, 2014, the Pennsylvania Superior Court dismissed the appeal.

21.     By Order dated July 18, 2014, Judge Murphy Ordered Marchese to refund to the Estate of Joseph C. Marchese all of the Diverted Accounts plus interest from 1998 within 30 days.

22.     Marchese, however, failed to comply with any of Judge Murphy's Orders.

On September 5, 2012, Judge Murphy found Marchese in contempt for not returning the Diverted Accounts.

23. Judge Murphy then removed Marchese as personal representative of the Estate of Joseph D. Marchese and appointed Gregory W. Philips, Esquire, as Administrator D.B.N.C.T.A. in his stead on September 21, 2012.

24. On November 5, 2014, Judge Murphy entered judgment against Marchese in the amount of $1,766,318.34, plus interest at 6% per annum beginning in 1998.

25. In the Orphans' Court contempt proceedings, Marchese testified that he used the proceeds of the Diverted Accounts to provide initial capital contributions to fund various businesses, including Hopwood.

### C.    THE CONSTRUCTIVE TRUST

26. Marchese and his mother Marie Marchese were both subsequently sanctioned by the Orphans' Court for not returning the Diverted Accounts.

27. On January 25, 2013, Mr. Philips filed a Petition to Impose a Constructive Trust over all of Marchese's assets, including his business interests that specifically included Hopwood.

28. Mr. Philips sent Gerald Mullaney a copy of the Petition and placed Mullaney and Hopwood on notice that Mullaney, or any member of Hopwood, was not to sell or otherwise dispose of Marchese's interests in Hopwood.

29. On January 25, 2015, Judge Murphy imposed a constructive trust over Marchese's assets, including his mother Marie ("Constructive Trust Order"). See **Exhibit "D"**.

30. Judge Murphy's Constructive Trust Order specifically stated that it

included **all of David Marchese's business interests, including Hopwood** (emphasis added).

31.     Mr. Philips again notified Gerald Mullaney of the Order.

32.     Further, Judge Murphy entered an Order and Opinion that specifically stated that the effective date of the constructive trust imposed over Marchese's assets was April 24, 2009. See **Exhibit "E"**.

33.     In order to purge his contempt after being incarcerated by Judge Murphy, on January 28, 2015, Marchese executed an assignment of all of his interests in Hopwood to the Estate of Joseph D. Marchese. See **Exhibit "F"**.

34.     Mr. Philips notified Gerald Mullaney of the assignment. Mullaney testified at his deposition that he was aware of the Constructive Trust Order:

```
BY MR. BIRCH:
     Q.   Were you aware that Judge Murphy of the Orphans'
Court had issued a constructive trust over all of David's
assets?
     A.   I became aware of that.
          MR. SABA:  Objection to form.  Go ahead.
          THE WITNESS:  I became aware of it.
BY MR. BIRCH:
     Q.   Okay.  How did you become aware of that?
     A.   I think through an email.
```

\*\*\*

Testimony of Gerald Mullaney, June 12, 2017.

35.     The Orphans' Court subsequently entered judgment on August 29, 2016,

6

against Hopwood Farms, LLC, in the amount of $1,766,318.34. See **Exhibit "G"**.

### D. THE FRAUDULENT TRANSFER

36. Sometime in 2011, the Mullaneys and McCauley began to concoct a scheme so that the Mullaneys would be relieved of their personal debt in Hopwood and McCauley would end up with the Hopwood Property.

37. Upon information and belief, Marchese was not aware of the above "side-deal" between the Mullaneys and McCauley.

38. An agreement was struck between the Mullaneys and McCauley whereby the Mullaneys would transfer their membership interests in Hopwood to McCauley.

39. The Mullaneys accordingly transferred all of their membership interests in Hopwood to McCauley despite the restrictions in Article 7 of the Operating Agreement. The consent for the transfer of the membership interests was not executed by Marchese.

40. After the Mullaneys' membership interests were transferred to McCauley, Gerald Mullaney remained as Managing Member.

41. After acquiring the Mullaneys' membership interests for no consideration, McCauley then entered into private negotiations with the mortgage lender, to the exclusion of Marchese, and purchased the Promissory Note for approximately $500,000.

42. In furtherance of this scheme, on September 6, 2012, McCauley then filed a Complaint in Mortgage Foreclosure in the Montgomery County Court of Common Pleas.

43. Service of the Foreclosure Complaint was accepted by Gerald Mullaney. See **Exhibit "H"**.

44. However, despite Gerald Mullaney receiving express notice of the

Constructive Trust Order from the Administrator of the Joseph C. Marchese Estate, Greg Philips, Mullaney intentionally failed to inform the members of Hopwood of either the Constructive Trust Order or the Foreclosure Complaint.

45. In furtherance of his scheme with McCauley, Gerald Mullany never defended the Foreclosure Complaint.

46. On June 15, 2014, McCauley filed a Motion for Summary Judgment.

47. Because no Answer was filed to either the Foreclosure Complaint or McCauley's Summary Judgment Motion, the Court entered an Order in favor of McCauley.

48. However, neither McCauley nor Gerald Mullaney informed the Court that the Constructive Trust Order had already been entered against all of Marchese's interests in Hopwood.

49. On April 26, 2015, McCauley caused the property owned by Hopwood to be sold at sheriff's sale to McCauley.

50. Notice of the sheriff sale was never sent to Greg Philips despite his ownership of Marchese's shares in Hopwood pursuant to Judge Murphy's Order and despite Gerald Mullaney's specific knowledge of the assignment of Marchese's interests in Hopwood.

51. In addition to the defective sheriff sale, McCauley's actions interfered with Orders of the Court. McCauley had no legal right or ability to eliminate Marchese's interest in Hopwood and convert Marchese's capital account in Hopwood.

52. The Constructive Trust Order and the Order for Marchese to assign all of his interests to Mr. Philips clearly predated the sheriff's sale. McCauley and Mullaney

8

simply ignored those Orders and proceeded with the foreclosure.

53. After the sheriff's sale, and as part of their scheme, McCauley sent Gerald Mullaney a letter that stated that he would not pursue a deficiency judgment against Hopwood, to the detriment of Marchese who lost his entire capital contribution by the contrived deal between Gerald Mullaney and McCauley. See **Exhibit "I"**

54. As part of his scheme, McCauley ended up with a $2,000,000 property in Hopwood with valuable development rights.

55. As part of his scheme, McCauley ended up with Marchese's entire capital contribution of at least $691,000.

56. Prior to the default summary judgment being entered in favor of McCauley, Marchese had filed a Complaint against Hopwood and McCauley on November 5, 2012, for breach of fiduciary duties, breach of good faith and fair dealing, breach under 15 Pa. C.S.A. §8321(C)(3), and breach of the operating agreement.

57. Most likely because of the contempt proceedings against him in the Orphans' Court, Marchese failed to disclose either the litigation in which he was the plaintiff against McCauley.

58. Both cases sat on the docket with little activity.

59. On May 26, 2016, in an effort to avoid sanctions in the Orphans' Court, Marchese filed a Chapter 7 Bankruptcy petition.

60. Marchese, however, failed to disclose the action against McCauley and Hopwood on his bankruptcy schedules.

61. On February 8, 2017, this Court denied Marchese a Chapter 7 discharge.

62. Moreover, Judge Frank approved a Stipulation on June 28, 2017, between

the Trustee and the Estate of Joseph D. Marchese to include any assets recovered from this litigation.

## COUNT I
## AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. §§ 548(A)(1)(B) AND 550(A)

63. The Plaintiff incorporates the above paragraphs as though set forth fully herein.

64. The transfer of Marchese's capital account to McCauley constitutes a "transfer" within the meaning of Bankruptcy Code section 101(54).

65. The transfer was made on or within two (2) years before the Petition Date.

66. With respect to the transfer, the Debtor, Marchese, received no consideration for his capital interest in Hopwood.

67. With respect to the transfer, the Debtor, Marchese received less than reasonably equivalent value in exchange for the transfer.

68. With respect to the transfer, Marchese was insolvent on the date the transfer was made or became insolvent as a result of the transfer.

69. The transfer was made for the benefit of an insider.

70. Pursuant to Section 548(a)(1)(B) of the Bankruptcy Code, the Plaintiff is entitled to avoid the transfer.

71. Pursuant to Section 550(a) of the Bankruptcy Code, the Plaintiff is entitled to recover the transfers avoided for the benefit of the Bankruptcy Estate.

## COUNT II
## AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS PURSUANT TO THE PENNSYLVANIA UNIFORM FRAUDULENT TRANSFER ACT, 12 PA. C.S.A. § 5104(A)(1) APPLICABLE IN BANKRUPTCY PURSUANT TO 11 U.S.C. § 544(B)(1)

72. The Plaintiff incorporates the above paragraphs as though set forth fully herein.

73. The scheme between Gerald Mullaney and McCauley to convert Marchese's membership interest in Hopwood and his entire capital account is a transfer of an interest of the Debtor in property.

74. The Complaint was filed within four (4) years after the transfer was made.

75. The transfer was made with the actual intent to hinder, delay, or defraud one or more of the Debtor's creditors within the meaning of Section 5104(b) of the Pennsylvania Uniform Fraudulent Transfer Act (the "UFTA").

76. With respect to each Transfer, the Debtor was insolvent on the date the Transfer was made or became insolvent as a result of the Transfer

77. In direct contravention of 12 Pa. C.S.A. §5104(a)(1), the Defendants effected the asset transfer with the actual intent to hinder, delay and defraud creditors as evidenced by, among other things, the following:

    a)    The asset transferred was a non-marital asset;

    b)    Marchese was insolvent at the time of or became insolvent as a result of or shortly after the asset transfer;

    c)    The asset transfer was effected without any consideration or a reasonably equivalent value in exchange; and

    d)    The asset transfer was effected without any or adequate notice to the

creditors of Marchese

78. Plaintiff seeks all remedies available to it pursuant to 12 Pa. C.S.A. §§5107 and 5108, including avoidance of the fraudulent transfer, tracing and attachment of the fraudulently transferred asset, a levy of execution on the transferred asset, and/or an award of monetary damages equal to the value of the asset fraudulently transferred.

## COUNT III
## AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. § 544(a)(3)

79. The Plaintiff incorporates the above paragraphs as though set forth fully herein.

80. The sheriff's sale of the Hopwood Property was a sham.

81. McCauley intentionally and deliberately, in conspiring with Gerald Mullaney, failed to file a truthful affidavit required under Pennsylvania law regarding notice of the sheriff sale to Mr. Philips, the owner of Marchese's interests in Hopwood. Pa. Rule 3129.1 *et seq,* provides:

**Rule 3129.1. Sale of Real Property. Notice. Affidavit.**

(a) No sale of real property upon a writ of execution shall be held until the plaintiff has filed with the sheriff the affidavit required by subdivision (b) and the notice required by Rule 3129.2 has been served.

(b) The affidavit shall set forth to the best of the affiant's knowledge or information and belief as of the date the praecipe for the writ of execution was filed the name and address or whereabouts of

(1) the owner or reputed owner of the real property and of the defendant in the judgment; and

(2) every other person who has any record lien on that property; and

(3) every other person who has any record interest in that property which may be affected by the sale; and

(4) every other person who has any interest in that property not of record which may be affected by the sale and of which the plaintiff has knowledge.

If the name and address or whereabouts of the persons in subparagraphs (1) through (4) cannot be reasonably ascertained, the affidavit shall so state.

82. The sheriff's deed to McCauley should be avoided for the following reasons:

   a. Judge Murphy's Constructive Trust Order caused all of Marchese's interests in Hopwood and hence, the Hopwood Property, to be owned by the Court imposed trust;

   b. No approval was sought or obtained by McCauley from the Orphans' Court in violation of Judge Murphy's Order to proceed with a foreclosure and in the process convert Marchese's entire capital contribution in Hopwood;

   c. No notice of the sheriff's sale was ever provided to Greg Philips, the Court appointed representative and the actual owner of Marchese's shares in Hopwood;

   d. McCauley had no standing to file a foreclosure and conspired in a deal with Gerald Mullaney to create standing in order to file a foreclosure and to relieve the Mullaneys of their personal obligations in Hopwood;

   e. McCauley converted Marchese's interests in Hopwood to the detriment of the Trustee's interests in Marchese's property

83. The above constitutes sufficient grounds to avoid the sheriff's deed to McCauley.

WHEREFORE, the Chapter 7 Trustee requests the entry of judgment in favor of the Plaintiff as follows:

(a) Avoiding the transfer of the Debtor's capital account in Hopwood as a fraudulent transfer;

(b) Avoiding the sheriff's deed to McCauley

(c) Attorneys' fees and costs; and

(d) Such other and further relief as is necessary and proper.

Respectfully submitted:

Dated: July 20, 2017

_____
Robert J. Birch, Esquire
Attorney for Gary Seitz, Chapter 7 Trustee