## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: DAVID C. MARCHESE | : | **Chapter 7** |
| | : | |
| Debtor. | : | **Bky. No. 16-13810 ELF** |
| ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ | : | |
| | : | |
| GARY F. SEITZ, Chapter 7 Trustee, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| JAMES MCCAULEY, | : | |
| MCCAULEY ASSOCIATES LIMITED PARTNERSHIP, | : | |
| GERALD MULLANEY, | : | |
| HOPWOOD FARMS LLC, nominal defendant, | : | **Adv. No. 17-189** |
| | : | |
| Defendants. | : | |
| ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ | : | |

# M E M O R A N D U M

## I.  INTRODUCTION

Debtor David Marchese ("the Debtor") filed this chapter 7 bankruptcy case on May 26,

2016.  Prior to the commencement of the case, the Debtor held a membership interest in

Hopwood Farms LLC ("Hopwood").  Hopwood's only valuable asset was a parcel of real estate

("the Property").  Hopwood lost the Property in a prepetition foreclosure sale conducted by

McCauley Associates Limited Partnership ("MALP"), an entity controlled by James McCauley

("McCauley").  McCauley and/or MALP also held a membership interest in Hopwood.

In this adversary proceeding, the chapter 7 trustee, Gary Seitz ("the Trustee"), asserts that

McCauley, MALP and another Hopwood member, Gerald Mullaney ("Mullaney"), are liable for

damages for breach of contract – i.e., for breach of Hopwood's operating agreement ("the

Operating Agreement") – and for breach of their fiduciary duties owed to Hopwood and to the

Debtor.  The Trustee also requests the imposition of a constructive trust, which he has styled as a "claim."

Essentially, the Trustee alleges that McCauley and MALP engineered the foreclosure against the Property for their benefit and to the detriment of the Debtor, Hopwood and the bankruptcy estate.  The Trustee also alleges that Mullaney actively colluded with McCauley or permitted the collusive foreclosure to occur through neglect.  As a result of the alleged wrongful conduct, the Trustee asserts that the Debtor and Hopwood suffered substantial economic loss.[1]

The Trustee's causes of action closely parallel the claims the Debtor asserted on his own behalf in state court pre-petition litigation.  The claims are made both as direct claims of the Debtor (to which the Trustee succeeded as the representative of the Debtor's bankruptcy estate), as well as derivative claims on behalf of Hopwood.

The Defendants have filed a Motion to Dismiss ("the Motion") under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) asserting:

1. All claims against Mullaney are barred by the expiration of the applicable statutes of limitation.

2. The Trustee has no standing to bring this suit because the relevant component of the Debtor's membership in Hopwood is not estate property.[2]

---

[1]     If successful, this adversary proceeding will result in the collection of assets by the estate and an increase in distribution to creditors.  Therefore, at a minimum, this proceeding is sufficiently related to the bankruptcy case to provide this court with subject matter jurisdiction.  See 28 U.S.C. §1334(b); see also Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984);  In re PennySaver USA Publ'g, LLC, 2018 WL 3222618, at *6–8 (Bankr. D. Del. July 2, 2018).

In his Amended Complaint, the Trustee alleges that this is a core proceeding.  While that may be questionable, its accuracy is irrelevant because the Trustee has consented to the entry of a final order by the bankruptcy court, rather than the issuance of proposed findings of fact and conclusions of law.  (See Adv. No. 17-189, Doc. # 51).  The Defendants, too, have expressly consented to the entry of a final order. (Id., Doc. #'s 7, 52).

[2]     The purported lack of standing is tantamount to a lack of subject matter jurisdiction.  See Cottrell v. Alcon Labs., 874 F.3d 154, 161–62 (3d Cir. 2017).  Hence, the Motion invokes Rule 12(b)(1).

    3.   The facts stated in the Amended Complaint fail to state a plausible claim for relief.

As explained below, with respect to the statute of limitations issue as to Defendant Mullaney, I will treat the Motion as a motion for summary judgment, as required by Fed. R. Civ. P. 12(d) (incorporated by Fed. R. Bankr. P. 7012). Based on the current state of the summary judgment record on this issue, I will deny the Motion as to the Trustee's breach of contract claim, but defer a ruling with respect to the breach of fiduciary duty claim in order to give the Trustee the opportunity to present evidence in opposition to the Motion.

Also, as explained below, the constructive trust claim will be dismissed.

Based on the current record, I am satisfied that the Trustee has standing to prosecute the claims he has asserted and that the facts pled in the Amended Complaint are sufficient to state a plausible claim for relief. Therefore, the balance of the Motion will be denied.[3]

## II. PROCEDURAL HISTORY

The litigation among the parties has a long and somewhat odd history.

On November 5, 2011, the Debtor filed suit against McCauley, MALP, and Hopwood in Montgomery County ("the State Court Action"), alleging a number of business torts and contract breaches. After preliminary objections were overruled, the Defendants filed an answer and new

---

[3]    The Motion raises narrow and discrete issues, and does not explore various questions arising from the intersection of federal bankruptcy and state statutory LLC law, which is a developing and challenging area of the law. See, e.g., Richard J. Mason & Patricia K. Smoots, Can an Estate Effectively Liquidate a Fractional Interest in an LLC?, Am. Bankr. Inst. J., Oct. 2015, at 32, 66.

    In this Memorandum, I have limited my discussion to those issues specifically raised in the Motion. See also n.23, infra.

matter.  The action then languished until June 14, 2016 when it was "terminated" by the state

court, apparently due to docket inactivity.  By that time, the Debtor had filed his chapter 7

bankruptcy case (on May 26, 2016).

On June 15, 2016, the day after the termination of the State Court Action, the Debtor

filed a motion to reinstate the action.  The Trustee intervened in the State Court Action and

joined in the Debtor's reinstatement request.  On December 14, 2016, the state court reinstated

the action.

On July 3, 2017, the Trustee commenced this adversary proceeding by removing the

State Court Action to the bankruptcy court.  On July 25, 2017, the Trustee filed another

Complaint in this adversary, raising transfer avoidance causes of action based on 11 U.S.C.

§§544, 548 and 550, but not the business torts described in the complaint in the State Court

Action.[4]  The Defendants filed a motion to dismiss, which I granted on November 28, 2017, with

leave to amend.

On December 15, 2017, the Trustee filed an Amended Complaint, which mainly revives

the State Court Action, but adds Mullaney as a Defendant.

The Defendants filed the instant Motion on January 19, 2018.  After the parties briefed

the issues, I held oral argument on April 19, 2018.  The Motion is ready for decision.

---

[4]      The procedural justification for the filing of this Complaint is questionable, considering that the
proceeding arrived in the bankruptcy court via removal, with the pleadings already closed.  However, the
Defendants consented to the filing of the July 25, 2017 Complaint.

## III.  RULE 12(b)(1) AND 12(b)(6) LEGAL STANDARDS

The Defendants have moved to dismiss the Amended Complaint for failure to state a

claim under Fed. R. Civ. P. 12(b)(6) (made applicable in adversary proceedings by Fed. R.

Bankr. P. 7012).

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the

factual allegations of a complaint, see Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993), and

determines whether the plaintiff is entitled to offer evidence to support the claims, Bell Atlantic

Corp. v. Twombly, 550 U.S. 544, 563 n.8 (2007).  A defendant is entitled to dismissal of a

complaint only if the plaintiff has not pled enough facts to state a claim for relief that is plausible

on its face.  Twombly, 550 U.S. at 547.  A claim is facially plausible where the facts set forth in

the complaint allow the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In evaluating the plausibility of the plaintiff's claim, the court conducts a context-specific

evaluation of the complaint, drawing from its judicial experience and common sense.  See, e.g.,

Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009); In re Universal Mktg., Inc., 460

B.R. 828, 834 (Bankr. E.D. Pa. 2011) (citing authorities).  In doing so, the court is required to

accept as true all allegations in the complaint and all reasonable inferences that can be drawn

therefrom, viewing them in the light most favorable to the plaintiff.  See, e.g., Hishon v. King &

Spalding, 467 U.S. 69, 73 (1984); Taliaferro v. Darby Twp. Zoning Bd., 458 F.3d 181, 188 (3d

Cir. 2006). The court is not bound to accept as true a legal conclusion couched as a factual

allegation. Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555.

The Defendants also raise the issue of standing, which is a challenge to this court's

jurisdiction and an invocation of Rule 12(b)(1).  See Ballentine v. United States, 486 F.3d 806,

810 (3d Cir. 2007).  The standard of review for a Rule 12(b)(1) facial challenge to the court's

subject matter jurisdiction is the same as the Rule 12(b)(6) standard – the allegations in the

complaint are accepted as true and all inferences are drawn in favor of the plaintiff.  In re Star

Grp. Communic's, Inc., 568 B.R. 616, 622 (Bankr. D.N.J. 2016); In re Merritt, 529 B.R. 845,

858–59 (Bankr. E.D. Pa. 2015), aff'd, 2016 WL 930696 (E.D. Pa. Mar. 10, 2016); In re Funches,

381 B.R. 471, 483 (Bankr. E.D. Pa. 2008).

# IV. FACTS

The well-pled facts of the Amended Complaint are summarized below.

## A.  Hopwood and the Alleged Collusive Foreclosure

In 2005, the Debtor, McCauley, Mullaney and two (2) other parties formed Hopwood in

order to acquire and develop real estate.  The Debtor owned a 50% interest in Hopwood.

McCauley or MALP,[5] Mullaney and the other two individuals each owned 12.5%.  Mullaney

was the manager of Hopwood.

In order to fund Hopwood, the Debtor contributed $500,000.00, and McCauley

contributed $182,895.65.

Hopwood purchased 172 Hopwood Road ("the Property") for $1,900,000.00, by applying

the capital contributions and financing the balance of the purchase price through a loan in the

amount of $1,235,000.00.  The loan, provided by Harleysville National Bank ("Harleysville"),

was evidenced by a note guaranteed by Mullaney and secured by a mortgage on the Property.

---

[5]    The Amended Complaint is ambiguous as to whether McCauley individually or MALP held the
membership interest in Hopwood and refers to them collectively as "McCauley."  To decide the Motion, I
need not clarify the ambiguity.

For a period of time, the Debtor paid the monthly mortgage payments, making a total of around $200,000.00 in payments, which were added to his capital account balance.

The members of Hopwood were to be compensated according to terms laid out in their Operating Agreement.  If the investment made a profit, Hopwood would distribute money to members with an outstanding capital account balance.  Once the capital contributions had been fully returned, additional profits would be allocated to the members according to their ownership interest.  In effect, this meant that the Debtor would obtain 80% of the first million dollars in profits, and 50% of all profits thereafter.

In early 2011, Hopwood began negotiations to purchase the note and mortgage on the Property from the holder at a discount.  At that point, McCauley was tasked with negotiating a buy-out of the outstanding note and mortgage on the Property by Hopwood.  Instead, McCauley negotiated on his own behalf and, through MALP, purchased the note and mortgage from the holder[6] for approximately $500,000.00,[7] without informing the Debtor or securing his approval as a 50% owner of Hopwood.

---

[6]     The Amended Complaint does not state whether Harleysville continued to hold the paper in 2011 when MALP purchased the note and mortgage.  The amended complaint filed in the state court before this matter was removed to the bankruptcy court states that the holder was American Acquisition Property VIII, LLC.

[7]     Compared to the amended complaint filed in the State Court Action on January 4, 2013, before this matter was removed to the bankruptcy court, the present Amended Complaint is spare as to the precise dates of the described events.  According to the state court amended complaint, MALP purchased the note and mortgage on August 15, 2011.

On September 6, 2012, MALP, now a creditor of Hopwood, filed a foreclosure action against Hopwood.  Mullaney accepted service of the foreclosure complaint.  Neither Mullaney nor McCauley informed the Debtor of the foreclosure, and neither defended the foreclosure.[8]

On November 5, 2012, while the foreclosure action was pending, the Debtor, whose requests for information had not been answered by Mullaney or McCauley, filed the State Court Action (later removed to this court), alleging that McCauley committed various business torts.

On June 15, 2014, because Hopwood failed to defend a summary judgment motion filed in the foreclosure action, the state court entered a foreclosure judgment in favor of MALP and against Hopwood.

MALP executed on the foreclosure judgment, causing the Property to be sold at sheriff's sale on April 26, 2015.  MALP purchased the Property at the sheriff's sale.

After the foreclosure sale, Hopwood had no assets and no likelihood of paying out the roughly $700,000.00 capital account balance in favor of the Debtor.  McCauley sent Mullaney a letter stating he would not pursue him on the personal guaranty and that Mullaney should consider his personal liability satisfied.[9]

---

[8]    The state court foreclosure docket shows that someone made an effort to defend against the foreclosure: two attorneys entered their appearances for Hopwood, and filed an answer and new matter. By April 2014, however, it appears that Hopwood's counsel had withdrawn their appearances and that Hopwood was unrepresented after that date. See McCauley Associates Limited Partnership v. Hopwood Farms LLC, No. 2012-24034 (C.P. Mtgy.).

[9]    The Amended Complaint also alleges that, at some point prior to MALP's purchase of the outstanding note and mortgage on the Property, McCauley (or MALP?, see n.5, supra), acquired Mullaney's membership interest in Hopwood; yet, the Amended Complaint also alleges Mullaney remained as the managing member.

## B.  The Constructive Trust in Favor of the JDM Estate

While the events leading to the Hopwood foreclosure and sheriff's sale were underway, the Debtor was the target in a separate set of legal proceedings that impact this adversary proceeding.

The Debtor was the administrator of the Estate of Joseph D. Marchese ("the JDM Estate").  In March 2012, as result of his misappropriation of funds of the decedent's estate (some of which the Debtor used to make his capital contribution to Hopwood), the state court determined that the Debtor should return $1,412,935.00 to the estate.  In September 2012, the state court held the Debtor in contempt for failing to return the funds and removed him as the administrator of the estate.  On November 5, 2014, the state court entered judgment against the Debtor in the amount of $1,766,318.34.  On January 25, 2015, the state court imposed a constructive trust over all of the Debtor's assets (including his interest in Hopwood), retroactive to April 24, 2009, in favor of the JDM Estate.

On January 28, 2015, in compliance with the order imposing the constructive trust, and to purge himself of a civil contempt, the Debtor executed a document which purported to assign his 50% ownership interest in Hopwood to Gregory Phillips, the replacement administrator of the JDM Estate.  Mullaney and Hopwood had notice of the imposition of the constructive trust and the assignment of the Debtor's ownership interest.

## C.  Events in the Bankruptcy Case

As stated earlier, the Debtor filed his chapter 7 case on May 26, 2016.

On June 10, 2016, the JDM Estate moved for relief from the automatic stay, largely on the theory that the bankruptcy estate had no interest in any of the Debtor's assets as a result of

the constructive trust established by the state court prior to the bankruptcy filing.  The court

granted the motion on July 28, 2016.

After the stay relief order was entered, the Trustee and the JDM Estate executed a

stipulation ("the Stipulation"), through which the JDM Estate authorized the Trustee to

administer certain assets; in return, the JDM Estate agreed to a "carve-out" for the bankruptcy

estate of ten percent (10%) of any recovery obtained by the Trustee.  The bankruptcy court

approved the Stipulation by order dated October 19, 2016.

On July 3, 2017, the Trustee removed the State Court Action, commencing this adversary

proceeding.


## V.  THE TRUSTEE'S CLAIMS

The Amended Complaint states four (4) causes of action.  Early in the Amended

Complaint, the Trustee asserts, in general terms, that he is bringing both direct and derivative

claims on Hopwood's behalf.  (Am. Compl. ¶ 5).  The balance of the pleading does not

differentiate between the two (2) types of claims.

Count I alleges that the Defendants breached Hopwood's Operating Agreement by failing

to perform certain duties laid out in the Operating Agreement and, as a result of those breaches,

Hopwood and the Debtor lost the Property.  Count I appears to be a direct claim insofar as the

Trustee alleges that the Defendants' conduct deprived the Debtor "of the benefit of his ownership

and management rights in Hopwood."  (Am. Compl. ¶ 75).

Count II alleges that McCauley and Mullaney breached their fiduciary duties of loyalty as

managers of Hopwood by appropriating the opportunity to purchase the mortgage, conspiring to

allow McCauley to acquire the Property for below market value and paying the Debtor nothing.

In Count II, the Trustee appears to be asserting both a direct and derivative claim, i.e., that McCauley and Mullaney's conduct breached their duties to Hopwood, and to the Debtor as a fellow LLC member.

Count III alleges that McCauley and Mullaney breached their duties of good faith and fair dealing by engaging in a scheme to foreclose on the Property and acquire it for far below market value, while paying the Debtor nothing, in violation of their duties under the LLC Operating Agreement.  It is not clear whether the Trustee intended this claim to be a direct or derivative claim.

Count IV alleges that the Defendants misappropriated a Hopwood business opportunity and that, under equitable principles, the proceeds of a misappropriated Hopwood business opportunity should be placed under a constructive trust in favor of the entity whose business opportunity was usurped.  This claim necessarily is a derivative claim.

## VI. STATUTE OF LIMITATIONS

### A.  Summary

The Trustee added Mullaney as a defendant on December 15, 2017, more than five (5) years after the initial complaint in this action was filed in state court.  The events and conduct giving rise to the Trustee's claims against Mullaney go back even further in time.

The Defendants argue that the claims against Mullaney are time-barred and should be dismissed.  They contend that both the two (2) year statute of limitations for breach of fiduciary duty and the four (4) year limitations period for breach of contract in Pennsylvania[10] expired

---

[10]        See In re Mushroom Transp. Co., Inc., 382 F.3d 325, 336 (3d Cir. 2004); 42 Pa. C.S.A. §§5524, 5525.

before the claims against Mullaney were first asserted in the December 2017 Amended

Complaint.

The Trustee counters that the statute of limitations did not expire because Mullaney's

misconduct was not discovered or discoverable until after the bankruptcy was filed – until a

deposition held on June 12, 2017.  (See Am. Compl. ¶¶ 40-41).[11]

As explained below, the Defendants' statute of limitations argument is based on alleged

facts derived from evidence outside of the Complaint.  If those facts are accepted, the Trustee's

contract claim was timely filed, but that his breach of fiduciary duties claim is barred by the

expiration of the applicable limitations periods expired.  However, because the Defendants rely

on evidence outside of the Amended Complaint, Fed. R. Civ. P. 12(d) requires that the Motion

---

[11]       The Trustee also argues that, in naming Mullaney as a Defendant, he is not adding a new party, but rather that he is simply clarifying the Defendant parties.  This is incorrect; Mullaney is a new party.

When a plaintiff amends a complaint, the clarification of a party's name is not barred by the statute of limitations; however, the addition of a new party to an existing action is not permitted when an action against that new party would otherwise be time-barred.  See, e.g., Anderson Equip. Co. v. Huchber, 690 A.2d 1239, 1241-42 (Pa. Super. Ct. 1997).  The hallmark of a 'new party' is when the addition of a new named defendant adds additional assets which are subject to liability.  Powell v. Sutliff, 189 A.2d 864, 865 (Pa. 1963).

Adding Mullaney as a defendant puts his personal assets at risk of an adverse judgment. When only Hopwood was a defendant, Mullaney was not at risk of personal liability.  15 Pa. C.S.A. §8834 ("A member or manager is not personally liable, directly or indirectly, by way of contribution or otherwise, for a debt, obligation or other liability of the company solely by reason of being or acting as a member or manager.")  Because a new pool of assets, belonging to Mullaney personally, is now subject to liability, adding Mullaney as a named defendant is the addition of a new party, not clarification of an existing party's name.

The Trustee seeks to avoid this conclusion by asserting that he is only suing Mullaney because "Hopwood as an entity cannot act on its behalf and must act by or on behalf of a managing member, as here Mullaney." (Doc. #43, pg. 9).  Contrary to the Trustee's assertion, Hopwood can be sued without naming a managing officer.  15 Pa. C.S.A. §8819(b) ("A limited liability company has the capacity to sue and be sued in its own name."); see also 15 Pa. C.S.A. §8991 (repealed LLC law providing same).  Also, nothing in the Amended Complaint suggests that the Trustee sued Mullaney in anything other than his individual capacity.

be treated as a motion for summary judgment and that I provide the Trustee with the opportunity

to marshal and submit evidence in opposition to the dismissal of the breach of fiduciary duty

claim against Mullaney.


**B. Commencement of the Statute of Limitations: General Rule and the Discovery Rule**

Under Pennsylvania law, the statute of limitations typically commences at the time a

cause of action accrues, i.e., when the plaintiff first suffers harm and has a right to institute suit.

E.g., Gleason v. Borough of Moosic, 15 A.3d 479, 484 (Pa. 2011); 2 Standard Pennsylvania

Practice 2d §13:41;.  As a general rule, the "lack of knowledge, mistake or misunderstanding do

not toll the running of the statute of limitations."  Dalrymple v. Brown, 701 A.2d 164, 167 (Pa.

1997) (quoting Pocono Int'l Raceway v. Pocono Produce, 468 A.2d 468, 471 (Pa. 1983)).

The general rule is tempered by the "discovery rule."  The discovery rule is a "judicially

created device that tolls the running of the applicable statute of limitations until the point where

the complaining party knows or reasonably should know that he has been injured and that his

injury has been caused by another party's conduct."  In re Olick, 565 B.R. 767, 792 (Bankr. E.D.

Pa. 2017) (quoting Creghan v. Procura Mgmt., Inc., 91 F.Supp.3d 631, 649 (E.D. Pa. 2015)).

Pennsylvania's discovery rule "requires that the plaintiff use '*all reasonable diligence* to

inform himself or herself properly of the facts and circumstances upon which the right of

recovery is based and to institute suit within the prescribed statutory period.'" Blanyar v. Genova

Prod. Inc., 861 F.3d 426, 431–32 (3d Cir. 2017) (italics in original) (quoting Ciccarelli v. Carey

Canadian Mines, Ltd., 757 F.2d 548, 556 (3d Cir. 1985).  To invoke the doctrine, a plaintiff

bears the burden to show "the inability of the injured, despite the exercise of reasonable

diligence, to know that he is injured and by what cause."  Fine v. Checcio, 870 A.2d 850, 858

(Pa. 2005); <u>see also</u> <u>Dalrymple</u>, 701 A.2d at 167.  Because its application is fact-specific, the

discovery rule can be difficult to apply at the motion to dismiss or summary judgment stage of a

case.  <u>See</u> <u>Olick</u>, 565 B.R. at 792.

A bankruptcy trustee may avail himself or herself of the discovery rule in connection

with an action that becomes part of the bankruptcy estate through 11 U.S.C. §541.  <u>See</u> <u>In re</u>

<u>Covenant Partners, L.P.</u>, 2017 WL 1532548, at *3 (Bankr. E.D. Pa. Apr. 25, 2017).


### C.  Consideration of the Statute of Limitations at the Rule 12(b)(6) Stage

In 2014, the Court of Appeals concisely summarized the key principles governing

consideration of a statute of limitations defense at the motion to dismiss stage:

> Technically, the Federal Rules of Civil Procedure require a defendant to plead an
> affirmative defense, like a statute of limitations defense, in the answer, not in a
> motion to dismiss.  In this circuit, however, we permit a limitations defense to be
> raised by a motion under Rule 12(b)(6) only if the time alleged in the statement of
> a claim shows that the cause of action has not been brought within the statute of
> limitations.  However, [i]f the bar is not apparent on the face of the complaint,
> then it may not afford the basis for a dismissal of the complaint under Rule
> 12(b)(6).

<u>Schmidt v. Skolas</u>, 770 F.3d 241, 249 (3d Cir. 2014) (quotations and citations omitted).

Also relevant to consideration of any Rule 12(b)(6) motion is Rule 12(d), which provides:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are
> presented to and not excluded by the court, the motion must be treated as one for
> summary judgment under Rule 56.  All parties must be given a reasonable
> opportunity to present all the material that is pertinent to the motion.

In <u>Schmidt</u>, the court also explained that there are situations in which a court may

consider matters outside of the complaint without transforming a Rule 12(b)(6) motion into a

Rule 56 motion for summary judgment:

> To decide a motion to dismiss, courts generally consider only the allegations
> contained in the complaint, exhibits attached to the complaint and matters of

public record.  However, an exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment. The rationale underlying this exception is that the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated [w]here the plaintiff has actual notice ... and has relied upon these documents in framing the complaint."  [W]hat is critical is whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited."

Schmidt, 770 F.3d at 249 (quotations and citations omitted).


## D.  11 U.S.C. §108(a)

One additional source of law must be considered in evaluating a statute of limitations

defense.  11 U.S.C. §108(a) provides:

> If applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of—
>
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
>
> (2) two years after the order for relief.

Under §108(a), a state law statute of limitations can be extended for up to two years (2)

by the filing of a bankruptcy petition.  11 U.S.C. §108.  However, this extension only applies if,

on the petition date, the state law statute of limitations has not run.  A "later bankruptcy filing

does not resurrect" a time-barred claim. In re Reading Broad., Inc., 390 B.R. 532, 552 (Bankr.

E.D. Pa. 2008).

In this case, the December 2017 Amended Complaint that added Mullaney as a party was

filed within two (2) years of the May 26, 2016 commencement of the bankruptcy case.  Thus,

with respect to the claims against Mullaney, the only issue is whether the statute of limitations

had expired as of the May 26, 2016, the date the bankruptcy petition was filed.

### E.  Discussion

As stated in the Amended Complaint, the gravamen of the claim against Mullaney is that

as early as some time in 2011, he entered into a scheme with McCauley designed to transfer

Hopwood's main asset to McCauley, to the detriment of Hopwood and the Debtor.  The Trustee

further posits that, pursuant to their scheme, both McCauley and Mullaney instigated various

actions, including MALP's purchase of the note and mortgage in 2011, the commencement of

MALP's September 6, 2012 foreclosure action against Hopwood, the eventual sheriff's sale of

the Property and its acquisition by McCauley and MALP in 2014.  The Trustee's theory is that

this conspiratorial cooperation was the secret counterpart of McCauley's and MALP's conduct

that caused the Debtor to initiate the State Court Action.

Given this theory, the right to institute suit against Mullaney necessarily existed as of

November 5, 2011 (the date the initial complaint in the State Court Action was filed), and the

statute of limitations must have commenced to run as of that date,[12] unless the discovery rule

mandates the use of a later starting date for the running of the limitations period.  If the

limitations period began to run on November 5, 2011, both the applicable two (2) year and four

(4) year statute of limitations on claims against Mullaney had expired when the Debtor

commenced this bankruptcy case on May 26, 2016.

The Trustee does not directly dispute this.  Instead, he invokes "the discovery rule" and

argues that the commencement of the statute of limitations was delayed because Mullaney's

---

[12]     Use of November 5, 2011 as the starting date is generous to the Trustee because, undoubtedly, the
conduct giving rise to the claims asserted on November 5, 2011 occurred prior to that date.

participation in the misconduct that damaged the Debtor and Hopwood was concealed from the

Debtor and the Trustee until after the commencement of the bankruptcy case.  Thus, according to

the Trustee, the statute of limitations did not commence until sometime after May 26, 2016 (the

date of the Debtor's bankruptcy filing).  Therefore, according to the Trustee, the statute of

limitations had not yet even begun to run when the bankruptcy case was filed.  If so, the addition

of Mullaney as a defendant on December 15, 2017 was well within both the two (2) year and

four (4) year limitation periods under Pennsylvania law (as well as the two (2) year limitations

period under 11 U.S.C. §108(a)).

However, to determine when the limitations period commenced with respect to the claims

against Mullaney, the crucial factual determination is the point in time when **the Debtor, not the

Trustee**, knew enough to surmise that Mullaney was acting in concert with McCauley – or at

least knew enough that a diligent person would have brought Mullaney into the litigation.

The Trustee's allegation in the Amended Complaint, which is accepted as true for Rule

12(b)(6) purposes, is that the Debtor was not aware of Mullaney's side-deal with McCauley

(Doc. #36 ¶¶ 40-41).

In response, the Defendants ask the court to consider statements made by the Debtor in

his prior amended complaint filed in the State Court Action on January 4, 2013, which they

contend refute the Trustee's position.

The timeline in the Debtor's state court amended complaint is as follows:

- In early 2011, McCauley advised the other Hopwood members that he would enter into negotiations on Hopwood's behalf to purchase the outstanding note and mortgage encumbering the Property;

- Instead, McCauley carried out private negotiations on his own behalf and concealed this from the other members;

17

- In June 2011, McCauley revealed his plans to purchase the note and mortgage, **but only to Mullaney and two (2) other Hopwood members** (and not the Debtor).

- On August 15, 2011, McCauley, through MALP, purchased the note and mortgage.

- On February 23, 2012, Mullaney resigned as manager, which had the effect of formalizing the transfer of management responsibility to McCauley that had occurred as early as the first half of 2011.

(State Court Am. Compl. ¶¶ 22-23, 25-26, 32, 35) (Adv. No. 17-189, Doc. # 1).

These well-pled allegations establish that, as of January 4, 2013, (the date the Amended Complaint was filed), the Debtor understood that Mullaney was aware of the actions that McCauley took to Hopwood's detriment, took no action to protect Hopwood's interest and merely resigned as manager eight (8) months later. This knowledge is sufficient to put the Debtor on notice that a reasonable investigation of Mullaney's conduct was required. In other words, these facts would have alerted a reasonable person to the distinct possibility that Mullaney had breached the Operating Agreement or his duties as a manager. As such, these facts effectively refute the Trustee's allegations that Mullaney's role in the alleged scheme with McCauley could not reasonably have been discovered until after the Debtor filed this bankruptcy case. Further, given the pendency of the State Court Action, the Debtor had access to the discovery tools available under the Pennsylvania Rules of Civil Procedure. Absent a showing that he was thwarted from exercising his discovery rights in some fashion, the Debtor's own allegations in his January 4, 2013 state court amended complaint strongly suggest that he was not diligent in following up on known "red flags" regarding Mullaney's conduct through May 26, 2016, the date of his bankruptcy filing.

In short, the evidence cited by the Defendants suggests that, notwithstanding the contrary allegations in the Amended Complaint, the Debtor was on sufficient notice of Mullaney's

18

misconduct **as of January 4, 2013** to permit the conclusion that the statute of limitations began

to run as of that date.  If so, the timeliness of the claims against Mullaney must be measured by

the time period between January 4, 2013 and the commencement of the bankruptcy case on May

24, 2016, a period of approximately three (3) years and four (4) months.  It follows that, as of the

commencement of the bankruptcy case, the two (2) year limitations period for breach of

fiduciary duty claims against Mullaney had expired, but the four (4) year breach of contract

claims had not expired and, pursuant to 11 U.S.C. §108(a), the deadline for the initiation of the

contract claims was extended for two (2) additional years.

To sum up, based on the evidence offered by the Defendants (and treating the motion as

one for summary judgment) stage, the evidence supports the dismissal of the breach of fiduciary

duty claims against Mullaney, but not the breach of contract claim.[13]  That is the best result the

Defendants can obtain based on the evidence they have offered.

However, it would be premature even to dismiss the breach of fiduciary duty claims

against Mullaney at this time.  Under Fed. R. Bankr. P. 12(d), it is necessary that I provide the

Trustee with the opportunity to present evidence regarding what the Debtor knew and when he

knew it.  Therefore, my order will provide the Trustee with a reasonable period of time to

supplement his response with evidentiary matter on these issues, after which the Defendants'

---

[13]     The parties should not lose sight of the fact that the discussion in the text is based on the
summary judgment posture of the case.  If the contract claim survives summary judgment, at trial, the
Trustee will have the burden of proving what he alleges in the Amended Complaint, i.e., that Mullaney's
conduct was concealed from the Debtor, warranting the application of the discovery rule.

request for dismissal of the breach of fiduciary duty claims against Mullaney will be ready for a summary judgment decision.[14]

For these reasons, a ruling on the Motion with respect to Mullaney's dismissal will be deferred pending further development of the record.

## VII.  THE TRUSTEE'S STANDING

The Defendants argue that any right to recover damages belongs solely to the JDM Estate, depriving the Trustee of standing to prosecute this adversary proceeding. They contend that the bankruptcy estate does not hold any interest that allows the Trustee to pursue the causes of action in the Amended Complaint because the beneficial interest in all of the Debtor's property was transferred to the JDM Estate pre-petition – either by the imposition of the constructive trust or by the Debtor's purported assignment of his interest in Hopwood.  The Defendants further assert that, even if the Stipulation with the JDM Estate did give the Trustee access to some interest which allowed a recovery, the claims set forth in the Amended Complaint fall outside the scope of the Stipulation.

I conclude that the Trustee has alleged facts in the Amended Complaint that support the bankruptcy estate's status as a party with a right to recover.

### A.  Standing: General Principles

In bankruptcy cases, the concept of "standing" is analyzed "by reference to the concepts of constitutional standing, prudential standing, 'real party in interest' (within the meaning of Fed.

---

[14]    I recognize that it may be difficult for the Trustee to develop the record further on these issues.  It is possible, and perhaps even likely, that the Debtor is either unavailable or will be uncooperative. However, both due process and Rule 12(d) require that I provide the Trustee with this opportunity.

R. Civ. P. 17) and the bankruptcy concept of 'party in interest.'"  In re Alcide, 450 B.R. 526, 534

(Bankr. E.D. Pa. 2011) (footnote omitted).  To some extent, the analysis has been simplified by

the Third Circuit's holding that constitutional standing and standing under the Bankruptcy Code

"are effectively coextensive."  In re Glob. Indus. Techs., Inc., 645 F.3d 201, 211 (3d Cir. 2011).

The core concept of standing is that a party in interest in a bankruptcy case must have

some legally protected interest that either has been adversely affected (thereby warranting

judicial relief) or that is in actual danger of being adversely affected (if relief is not granted).

Alcide, 450 B.R. at 535.  Further, "inherent in the requirement that a party in interest must have

some 'legally protected' interest is the additional requirement that the party must be asserting its

own rights and not that of another entity."  Id. (citing cases).

### B.  Applicable Pennsylvania Law

### 1. 1994 LLC Law governs substance; 2016 LLC Law governs procedure

As necessary legal background to the determinations below, I must discuss certain

principles governing limited liability company ("LLC") interests as set forth in the statute

governing LLCs prior to 2017 and the effect of recent changes in the LLC statute.

The main events in this case took place between 2005 (the formation of Hopwood) and

2015 (the sale of the Property in foreclosure).  During that time, Pennsylvania LLCs were

governed by the Limited Liability Company Act of 1994, as amended in 2001 ("the 1994 Act").

P.L. 703, No. 106, former 15 Pa. C.S. §§ 8901 et seq. (repealed).   That law was repealed and

replaced in 2016 by the Pennsylvania's adoption of the Revised Uniform Limited Liability

Company Act (2006) (last amended 2013) (the "2016 Act").  15 Pa. C.S. §§ 8811 et seq.

Effective April 1, 2017, the 2016 Act purports to govern all LLCs, even those established before its effective date.  15 Pa. C.S. §8811(c).

There is a presumption that a statute will be applied prospectively, not retroactively.  1 Pa. C.S. §1926.  Retroactive application occurs when a change in a statute "would alter existing obligations" of parties in litigation.  Empire Sanitary Landfill, Inc. v. Com., Dep't of Envtl. Res., 684 A.2d 1047, 1059 (Pa. 1996).  On the other hand, "legislation concerning purely procedural matters will be applied not only to litigation commenced after its passage, but also to litigation existing at the time of passage." Morabito's Auto Sales v. Com., Dep't of Transp., 715 A.2d 384, 386 (Pa. 1998) (citing Galant v. Dep't of Envtl. Res., 626 A.2d 496, 498–99 (Pa. 1993)). Procedural matters are those relating to "the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them." Laudenberger v. Port Auth. of Allegheny Cty., 436 A.2d 147, 150 (Pa. 1981) (quoting Sibbach v. Wilson & Co., 312 U.S. 1, 14 (1941)).

The conduct giving rise to the claims asserted in this adversary proceeding and the action itself all arose before the effective date of the 2016 Act.  The parties agree (and I concur) that the substantive law governing the rights of Hopwood and its members is the 1994 Act, while the procedural aspects are governed by the 2016 Act.  In practice, this means that the rights and duties of the Defendants are controlled by the 1994 Act, as are defenses to the claims based upon substantive law.  The Trustee's potential remedies, as well as defenses based upon procedural matters, are governed by the 2016 Act.

### 2. economic interests are transferable; governance interests are non-transferable

Under Pennsylvania LLC law, old and new, ownership in an LLC is made of two distinct interests.

An economic interest entitles the holder to distributions from the LLC according to the terms of its operating agreement. Subject to the provisions of the operating agreement, this interest is validly transferrable, and entitles the transferee to the distributions which would have been due the transferor. See 15 Pa. C.S. §§ 8812(a), 8851; 15 Pa. C.S. §8924 (repealed); Zokaites v. Pittsburgh Irish Pubs, LLC, 962 A.2d 1220, 1223 (Pa. Super. Ct. 2008). The economic interest is a transferrable interest.

The second type of interest, the governance, or management interest, entitles the holder to management and decision-making rights in the entity in line with the statute and the operating agreement. The bedrock principle of LLC governance is the "pick your partner" doctrine, which prevents the owners of an LLC from being forced into business with the assignee or transferee of another member. See Fed. Nat. Mortg. Ass'n v. Grossman, 2014 WL 4055371, at *2 (D. Minn. Aug. 15, 2014); Uniform Law Commission, Revised Uniform Limited Liability Company Act (2006, amended 2013) §502 and Comment (enacted in PA as the 2016 Act, 15 Pa. C.S. §§8811 et seq.). The 1994 and 2016 Acts effectuate this principle by making the governance interest non-transferrable. See 15 Pa. C.S. §8924(a) (repealed) (Absent unanimous agreement by the other members, "the transferee of the interest of the member shall have no right to participate in the management of the business and affairs of the company or to become a member"); 15 Pa. C.S. §8852(g) ("if a member transfers a transferable interest, the transferor retains the rights of a member other than the transferable interest transferred and retains all the duties and obligations of a member").

## C. Applicable Bankruptcy Law Principles

When a bankruptcy petition is filed, "all legal or equitable interests of the debtor in property," "wherever located and by whomever held," become property of the bankruptcy estate. 11 U.S.C. §541(a)(1). "Property of the estate" includes all causes of action that the debtor had a right to bring at the time the bankruptcy was filed, including causes of action that the debtor was not aware of prior to the bankruptcy filing. 5 Collier on Bankruptcy §541.07 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2018); see In re Kane, 628 F.3d 631, 637 (3d Cir. 2010); In re O'Dowd, 233 F.3d 197, 202 (3d Cir. 2000).  "In the role of successor to all of the debtor's interests, the trustee stands in the shoes of the debtor and can only assert those causes of action possessed by the debtor. [Conversely,] [t]he trustee is, of course, subject to the same defenses as could have been asserted by the defendant had the action been instituted by the debtor."  In re Total Containment, Inc., 335 B.R. 589, 620 (Bankr. E.D. Pa. 2005) (quotations and citations omitted).


## D. The Defendants' Arguments

The Defendants assert that the pre-petition transfer of the Debtor's economic interest to the JDM Estate deprives the Trustee of any right to recover on the claims asserted in the Amended Complaint.[15] Before the Debtor filed the petition, the state court imposed a

---

[15]     At oral argument the Defendants raised the possibility that the transfer to the JDM Estate caused the Debtor to be dissociated from Hopwood and extinguished his governance interest and membership. None of the facts in the current record demonstrates that any event of disassociation took place when the Debtor attempted to assign his interests in Hopwood. See 15 Pa. C.S. §8971(a)(4).  Additionally, in their written submissions, the Defendants unequivocally took the position that the Debtor's governance rights remained with him, undisturbed and unharmed.  (Def. Memorandum of Law at 20) (unpaginated) (Doc. # 40); (Def. Reply at 2) (unpaginated) (Doc. #44).

constructive trust that purported to transfer the beneficial interest in all of the Debtor's assets to the JDM Estate, leaving the Debtor (and his successor by operation of law, the bankruptcy estate) with mere legal title.  The Defendants point out that, when the sheriff's sale of the Property occurred on April 26, 2015 (arguably, the point in time when the alleged damages were suffered), the Debtor's beneficial interest in his Hopwood membership had already passed to the JDM Estate as a result of the constructive trust.  Further, when the constructive trust was imposed, the State Court Action was already pending and it, too, presumably passed to the JDM Estate.  Thus, it is unclear whether any interest passed to the bankruptcy estate that would support the Trustee's prosecution of the claims originally asserted by the Debtor before the imposition of the constructive trust.  See Williams Twp. Bd. of Supervisors v. Williams Twp. Emergency Co., 986 A.2d 914, 922 (Pa. Commw. Ct. 2009) (constructive trustee holds bare legal title, but is under an equitable duty to convey all beneficial interests to the beneficiary of the trust);  see also 11 U.S.C. §541(b)(1) (estate property does not include powers a debtor may exercise "solely for the benefit of another").[16]

The Trustee responds and justifies his status as Plaintiff, based on the Stipulation he entered into with the JDM Estate.  (See Am. Compl. ¶ 65); see also Part IV.C., supra.

The Defendants reply that the Stipulation, by its own terms, does not authorize the Trustee to prosecute the direct and derivative claims asserted by the Debtor before the bankruptcy case was filed and the State Court Action was removed to this court.

---

[16]    The constructive trust was reinforced by the Debtor's execution of an assignment that purported to transfer his entire membership interest in Hopwood to the JDM Estate.  The parties agree that, under applicable state law, the assignment was not effective with respect to the Debtor's management interest, which remained with the Debtor through the bankruptcy petition date.  The parties also agree, however, that the assignment was effective as to the Debtor's economic interest.

### E.  Discussion

### 1.  the Stipulation

The parties appear to agree that, absent the Stipulation, the Trustee lacks the authority to prosecute the claims in the Amended Complaint due to the state court's prepetition imposition of the constructive trust on all of the Debtor's assets.  I will accept this as the starting point of my analysis.  The parties, however, disagree regarding the scope and meaning of the Stipulation.

The Defendants' core arguments are: (1) the text of the Stipulation does not encompass a transfer of rights from the JDM Estate to the bankruptcy estate sufficient to warrant the Trustee's prosecution of the claims in this adversary proceeding; and (2) even if the Stipulation can be read to transfer litigation rights to the bankruptcy estate, the deadline for exercising those rights expired pursuant to the Stipulation before the Trustee did so.

As explained below, in ruling on the Rule 12(b)(6) motion, I cannot conclude, as a matter of law, that the Stipulation does not encompass the Trustee's right to litigate the claims asserted in the Amended Complaint.  Therefore, the Motion will be denied with respect to this issue without prejudice to the Defendants' rights to raise the issue at later stage of the proceeding.

### 2.  applicable legal standard

A settlement agreement is treated as a contract and its meaning is determined by employed general rules of contract interpretation. See, e.g., Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 282 n.50 (3d Cir. 2014); In re Cendant Corp. Prides Litig., 233 F.3d 188, 193 (3d Cir. 2000). "The fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the contracting parties." Great Am. Ins. Co. v. Norwin Sch. Dist., 544

F.3d 229, 243 (3d Cir. 2008) (quoting Murphy v. Duquesne Univ., 777 A.2d 418, 429 (Pa. 2001)

and applying Pennsylvania law).

When the terms of a contract are clear and unambiguous, courts determine their meaning

from the four corners of the contract. However, if the written contract is ambiguous, the parties

may offer, and the court may consider, extrinsic evidence to assist the court in resolving the

ambiguity and determining the intent of the parties.

> The determination whether a contract is ambiguous is a question of law
> determined by the court. The court makes this determination by considering, from
> an objective standpoint, whether the language in the contract is reasonably
> susceptible to at least two (2) different interpretations. In making the
> determination whether an ambiguity exists, a court must consider the words of the
> agreement, alternative meanings suggested by counsel, and extrinsic evidence
> offered in support of those meanings. In evaluating the language of the contract, a
> court should give the words their plain and ordinary meaning. A contract is not
> rendered ambiguous merely because the parties do not agree on its meaning.

In re the Baptist Home of Phila., 525 B.R. 236, 242–43 (Bankr. E.D. Pa. 2014) (footnotes

and quotations omitted).


### 3.  interpretation of the Stipulation

In certain respects, the Defendants' reading of the Stipulation is the more natural one.

The Trustee and the JDM Estate entered into the Stipulation after the JDM Estate had

already obtained relief from the automatic stay.  The stay relief order was unqualified,

authorizing the JDM Estate to "exercise any state court remedies with respect to Debtor's

property subject to the constructive trust established by the prepetition state court order dated

July 17, 2015 in No. 2004-X3559 (Orph.Ct., C.P. Mtgy)."  (Bky. No. 16-13810, Doc. # 29).

The Stipulation acknowledged the existence of the stay relief order, but then stated the

parties' agreement that the Trustee "is uniquely situated to quickly, efficiently and effectively

**inventory and liquidate Debtor's assets** in order to make the JDM Estate whole for assets that are part of the constructive trust and rightfully owned by the JDM Estate."  (Stip. Recital, Bky. No. 16-13810, Doc. # 65-2) (emphasis added).

The Stipulation added that "time is of the essence" for the Trustee "to inventory, secure Debtor's assets and liquidate Debtor's Assets given the debtor's proclivity to hide assets and transfer property to others."  (Id.; see also Stipulation ¶ 5).[17]  Paragraph 9 of the Stipulation set a deadline of 180 days for the Trustee "to enter into meaningful negotiation for the sale of Assets," with a potential extension of an additional thirty days (for a total of 210 days) for the Trustee to enter into a written agreement "for the Sale of the Assets."  (Stipulation ¶ 10).

The Stipulation goes on to provide for a 90/10% split of net recoveries (defined as gross proceeds less professional fees incurred in the collection process and the trustee commission). (Stipulation ¶ 9).

Other than the provision regarding the 90/10% division of the net recoveries, all of the Stipulation provisions discussed above, on their face, appear to be directed toward the bankruptcy Trustee's collection and liquidation of either tangible assets or cash equivalents, not a lawsuit already filed and pending in another court.  One does not ordinarily consider the administration of a debtor's prepetition legal claim in a bankruptcy case to be resolved by a "sale" of the cause of action, and it is hardly likely that the parties would have contemplated that the claims against the Defendants, then pending in state court, would be "liquidated" within 180 days in the state court, the bankruptcy court, or any court.

The upshot of the Defendants' argument is that the litigation claims then pending in state court were not included in the assets that the Trustee and the JDM Estate agreed could be

---

[17]     As the quoted passage illustrates, prior to ¶¶ 7-9, the Stipulation uses the terms "assets" and "Assets" interchangeably without treating the capitalized version as a defined term.

liquidated by the Trustee pursuant to the Stipulation; rather, those claims remain entirely in the hands and under the control of the JDM Estate, leaving the Trustee as a stranger to the litigation with no beneficial rights in the claims and, therefore, without standing to prosecute the claims.

On the other hand, ¶¶ 2 and 3 of the Stipulation refer to the JDM Estate as the equitable owner of certain assets, "listed below," and state the parties' intent that these assets be made "available to the Trustee" in order to efficiently "administer and liquidate the Debtor's Assets." (Stipulation ¶¶ 2, 3). The only subsequent listing of assets in the Stipulation is found in Paragraph 7, which includes the "Debtor's claim against HOPWOOD Farms, LLC, James McCauley, James McCauley Associates, LP, docketed in Montgomery County Court of Common Pleas at number 2012-28320." (Stipulation ¶ 9). The assets listed in ¶ 7 are then defined as "Assets," the term used in ¶ 9 (now as a defined term). Paragraph 9 then authorizes and describes the 90/10% division of net recoveries between the JDM Estate and the bankruptcy estate.

In short, read together, ¶¶ 2, 3 and 9 arguably express the parties' intent to permit the Trustee to pursue the claims in the State Court Action, functionally transferring a partial interest in the claims back to the bankruptcy estate, (notwithstanding the constructive trust) as part of a "carve-out" agreement between the JDM Estate and the Trustee.[18]

---

[18]     The term "carve-out" is one of those unique bankruptcy phrases, much like "cram down," that appears nowhere in the Bankruptcy Code but connotes definite meaning to parties. It is an agreement by a party secured by all or some of the assets of the estate to allow some portion of its lien proceeds to be paid to others, i.e., to carve out of its lien position. It commonly arises in two contexts. The first, applicable here, is where there are no unliened assets, and the lien creditor agrees to release funds to unsecured creditors, as an incentive to the Chapter 7 trustee to administer the assets. Carve outs are also common in Chapter 11 cases in favor of debtor's attorneys as part of cash collateral agreements. In re White Glove, Inc., 1998 WL 731611, at *6 (Bankr. E.D. Pa. Oct. 14, 1998). In the present context, the status of the JDM Estate is the functional equivalent of a creditor secured by all of the assets of the bankruptcy estate.

### 4.   the Trustee has standing to prosecute the claims he has asserted

In applying these legal principles, I conclude, for the reasons explained above in Part VII.E.3., that the Stipulation is ambiguous.  Thus, the parties are entitled to offer extrinsic evidence to establish the meaning of the contract and the parties' intent.  In connection with this Rule 12(b)(6) motion, such evidence has not yet been offered.

Given the posture of the dispute, it is appropriate to deny the Motion without prejudice. Making all inferences in favor of the Trustee, and based on the Stipulation, it is fair to conclude that the bankruptcy estate has a concrete interest in claims asserted in the Amended Complaint. However, the Defendants are entitled to develop the record further, if they so choose, to try to establish that the Trustee and the JDM Estate did not intend to include the claims asserted by the Debtor in the then-pending State Court Action as an asset to be administered by the Trustee and to raise the issue again at a later stage of this proceeding.[19]

## VIII.  THE SUFFICIENCY OF THE COMPLAINT UNDER RULE 12(b)(6)

The Defendants assert that the facts pled in the Amended Complaint do not satisfy the plausibility standard under Rule 12(b)(6) as articulated in the Iqbal and Twombly Supreme Court cases.  See Part III, supra.  When scrutinized carefully, the Defendants' argument is limited to the Debtor's direct claims for breach of contract (to which the Trustee succeeded either by virtue

---

[19]     Considering that the JDM Estate has voiced no objection to the Trustee's prosecution of the claims asserted in the Amended Complaint, and that the Trustee and the JDM Estate are the parties to the Stipulation and the likely source of extrinsic evidence to clarify the meaning of the Stipulation, the Defendants' pursuit of this issue may be futile.  But they are entitled to try, if they so desire.

of 11 U.S.C. §541 or the Stipulation).[20]

As explained below, the lack of clarity and precision in the Amended Complaint lends some credence to the Defendants' position. Nevertheless, in reading the Amended Complaint holistically and drawing all reasonable inferences in favor of the Trustee, I conclude that the facts pled are sufficient to make out a plausible claim for relief under the Trustee's breach of contract theory.

Count I of the Amended Complaint asserts a claim for breach of the Hopwood Operating Agreement. Specifically, the Trustee alleges that McCauley, as de facto manager, breached §5.7, which requires the manager to make a capital call to the members if Hopwood "requires funds." (Amended Complaint ¶¶ 70-73). Curiously, in Count I, the Trustee asserts the contract breach caused the Debtor to lose "valuable managerial rights" in Hopwood and makes no reference to any direct economic harm to the Debtor.[21]

Later in the Amended Complaint, in Count II (breach of fiduciary duty), the Trustee does describe economic harm the Debtor allegedly suffered due to the Defendants' misconduct:

> The breaches by Mullaney and McCauley caused Marchese, as an individual, unique damages as 50% owner of Hopwood, in that Mullaney and McCauley and set out to destroy said equity interest and steal Marchese's

---

[20]     With respect to the Trustee's other direct claim, for breach of fiduciary duty, the Defendants' sole ground for dismissal of the claim is based on their assertion that the bankruptcy estate lacks a legally cognizable interest in that claim. That issue was addressed earlier in this Memorandum. As for the Trustee's authority to assert derivative claims on Hopwood's behalf (both contractual and tort), the Defendants' Motion is silent.

[21]     Paragraph 74 of the Amended Complaint states:

> McCauley's breach of the Operating Agreement directly and proximately caused Marchese damages in the form of loss of his valuable managerial rights [in] Hopwood as well as the opportunity to purchase the Note and Mortgage, the necessity of defending the Foreclosure Proceedings, and the conversion of the Hopwood Property.

31

managerial rights in Hopwood and convert the sole asset of Hopwood for his own personal use and benefit.

(Amended Complaint ¶ 85).

The Defendants seize upon the narrow depiction of the alleged damages in Count I – i.e., that the damages were the loss of the Debtor's managerial rights – to argue that the Trustee has not alleged any legally cognizable damages. They reason that managerial rights are not transferrable, that they remain intact with the Debtor (or possibly the bankruptcy estate)[22] as a matter of law, and therefore, nothing the Defendants did adversely affected those managerial rights. In the absence of any damages, the Defendants contend the contract claim should be dismissed.

I decline to read the Amended Complaint so narrowly.

Certainly, the Amended Complaint should have been drafted more precisely to distinguish between the direct and derivative claims being asserted as well as the damages allegedly suffered by the Debtor individually and the damages suffered by Hopwood. Nevertheless, reading the pleading fairly as a whole, I am satisfied that it alleges that the Defendants' misconduct, both by breach of conduct and breach of statutory duties, caused damage to the Debtor's interest in Hopwood.

---

[22]  It is not settled whether a bankruptcy trustee can succeed to the managerial rights of an individual debtor who is an LLC member. The "pick your partner" principle discussed earlier suggests not. On the other hand, when a bankruptcy petition is filed, "all legal or equitable interests" of the debtor in property, "wherever located and by whomever held," become property of the bankruptcy estate. 11 U.S.C. §541(a)(1). The Bankruptcy Code also defeats restrictions on transfers: prepetition property enters the estate "notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law … that restricts or conditions transfer of such interest by the debtor."  11 U.S.C. §541(c)(1)(A).  A bankruptcy court in another district in Pennsylvania has held that §541(c)(1) overwhelmed even the normally-inviolable "pick your partner" doctrine, so the debtor's transferrable and governance interests were swept into the bankruptcy estate.  See In re Garbinski, 465 B.R. 423, 427 (Bankr. W.D. Pa. 2012). I express no opinion on the issue at this time.

Before the breaches, the Debtor possessed LLC interests which, in practical terms, were worth something: they entitled the holder to 80% of the distributions from an entity with $700,000.00 in unencumbered equity.  As a result of the breaches, those interests are worth nothing – there are no remaining assets in Hopwood, and no prospect of there ever being any new assets.  The Debtor, and by extension the Trustee and the JDM Estate, had a right to the vast majority of any distribution by Hopwood, but that right was made worthless by the Defendants' arguably wrongful conduct.  The Trustee has pled sufficient facts to make out a plausible claim for relief.[23]

## IX.  CONCLUSION

For the reasons stated above, the Motion will be granted in part, denied in part and deferred in part.

**Date: <u>July 16, 2018</u>**

_____
**ERIC L. FRANK**
**U.S. BANKRUPTCY JUDGE**

---

[23]   The more complicated and difficult issues, ones entirely unexplored in the Motion, include: whether alleged misconduct is viewed more properly as causing damages to Hopwood or to the Debtor's membership interest; whether Hopwood or the Debtor (or both) may properly assert contract and breach of fiduciary duty claims under applicable nonbankruptcy law for the types of misconduct alleged in the Amended Complaint; and whether the Trustee may properly assert Hopwood's derivative claims.  As stated in n.3, <u>supra</u>, because these issues were not raised in the Motion, I express no opinion on them at this time.