IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In Re:<br><br>DAVID C. MARCHESE,<br><br>               Debtor. | CHAPTER 7<br><br>BANKRUPTCY NO. 16-13810 - ELF |
| **GARY F. SEITZ, TRUSTEE,**<br><br>               **Plaintiff,**<br><br>v.<br><br>**JAMES McCAULEY t/a McCAULEY ASSOCIATES LIMITED PARTNERSHIP, GERALD MULLANEY and HOPWOOD FARM, LLC,**<br><br>               **Defendants.** | **ADVERSARY NO. 17-189-ELF** |

**STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**

Defendants, by and through their counsel, Weir & Partners LLP, submit the following as their Statement of Material Facts Not in Dispute:

1. On November 15, 2005, McCauley Associates, L.P. ("MALP") executed that certain "Hopwood Farm, LLC Limited Liability Company Operating Agreement, thereby becoming the holder of a 12.5% minority interest. Exhibit "A Agreement).

1

2. Pursuant to its certificate of organization, Hopwood is a manager-managed Pennsylvania limited liability company that was formed on October 27, 2005. Exhibit "D" (Certificate of Organization).

3. James McCauley never was either a member or manager of Hopwood. Exhibit "C" (McCauley Affidavit); Exhibit "G" (Mullaney Affidavit) Exhibit "A" (Operating Agreement).

4. From the inception of Hopwood until his resignation on February 23, 2012, Gerald Mullaney was the manager, president and chief executive officer of Hopwood Farm, LLC. Exhibit "A" (Operating Agreement); Exhibit "G" (Mullaney Resignation).

5. A copy of such resignation was delivered to all of the Members of Hopwood, including the Debtor, by email on February 23, 2012. Exhibit "B" (Mullaney Resignation)

6. At no point in time did the Members of Hopwood, including the Debtor, vote to appoint any other person as the Manager of Hopwood Farm, LLC. Exhibit "C" (McCauley Affidavit); Exhibit "G" (Mullaney Affidavit).

7. At no point in time did anyone obtain authorization to file any lawsuit against any of the defendants herein on behalf of Hopwood. Exhibit "G" (Mullaney Affidavit)

8. At no point in time did anyone make a demand on Mullaney to file a lawsuit asserting any of the claims asserted herein against any defendant. Exhibit "G" (Mullaney Affidavit).

9. Though Hopwood was formed on October 27, 2005, approximately one month prior to the time that MALP joined as a member, MALP made initial capital contributions in the amount of $50,000.00 on November 16, 2005 and $132,895.65 on December 15, 2005. Exhibit "C" (McCauley Affidavit); Exhibit "H" (Copies of Checks).

10. In exchange for its initial capital contributions, MALP owned 12.5% of the membership interests of Hopwood. Exhibit "A" (Operating Agreement).

11. The purpose of the contributions was to provide a substantial part of the non-borrowed part of the purchase price for the property located at 172 Hopwood Road, Upper Providence, PA 19426 (the "Hopwood Property"), which was and is an undeveloped parcel of land that was purchased by Hopwood on December 15, 2005. Exhibit "C" (McCauley Affidavit).

12. The total purchase price for the Hopwood Property was $1,900,000 and, to fund the remainder of the purchase price above contributions of members, Hopwood borrowed $1,235,000.00 from Harleysville National Bank (the "Loan"). Exhibit "C" (McCauley Affidavit).

13. The intention of Hopwood was to develop the Hopwood Property with residential housing, but by 2008, Hopwood was experiencing difficulties with the local governmental authorities in connection with the costs to develop the Hopwood Property as well as the historic crash of the real estate market. Exhibit "C" (McCauley Affidavit).

14. Hopwood was unable to pay the monthly payments on the Loan and, as a result, by 2010 the Loan fell into default and the lender was preparing to exercise its rights, including to collect from the guarantors of the loan, which included MALP, Mullaney, McCauley and Debtor. Exhibit "C" (McCauley Affidavit).

15. Moreover, David Marchese, by this time was apparently embroiled in certain family disputes and was no longer able to provide monies to Hopwood to fund its expenses and was disappearing for great lengths of time. Exhibit "C" (McCauley Affidavit).

16. The members of Hopwood, including Debtor engaged in many discussions seeking to find a solution that would save Hopwood and the Hopwood Property and the members agreed that the solution would be to find replacement financing, if available. These discussions began immediately upon the default on the Loan and continued into the summer of 2011. Exhibit "C" (McCauley Affidavit).

17. Despite numerous efforts to find replacement financing for Hopwood, which efforts were undertaken by McCauley and Debtor, financing was not available to Hopwood and Hopwood was otherwise unable to fund any resolution of its default situation regarding the Loan, including a purchase of the Loan from the then holder, American. Exhibit "C" (McCauley Affidavit).

18. During this time period, Hopwood made application to no less than five lenders for replacement financing, all of which were denied. Exhibit "C" (McCauley Affidavit).

19. Despite numerous negotiations with American for forbearance, the negotiations ultimately were unsuccessful. Exhibit "C" (McCauley Affidavit).

20. Hopwood was not able to avail itself of any opportunity to save the project or the property or to purchase the Loan. Exhibit "C" (McCauley Affidavit).

21. On August 15, 2011, MALP entered into an agreement with American whereby it took by assignment the obligations owing by Hopwood to American in exchange for the payment of $550,000.00. Exhibit "C" (McCauley Affidavit).

                    WEIR & PARTNERS LLP

                    BY: /s/ Jeffrey S. Cianciulli
                         Jeffrey S. Cianciulli, Esquire
                         1339 Chestnut Street, Suite 500
                         Philadelphia, PA  19107
                         Phone (215)665-8181
                         Facsimile: (215) 665-8464
                         jcianciulli@weirpartners.com

Date: January 10, 2019            Attorneys for Defendants