### UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: DAVID C. MARCHESE, | : | Chapter 7 |
| | : | |
| Debtor. | : | Bky. No. 16-13810 ELF |
| | : | |
| | : | |
| GARY F. SEITZ, Chapter 7 Trustee, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| JAMES MCCAULEY, | : | |
| MCCAULEY ASSOCIATES LIMITED PARTNERSHIP, | : | Adv. No. 17-0189 |
| GERALD MULLANEY, | : | |
| HOPWOOD FARMS LLC, nominal defendant, | : | |
| | : | |
| Defendants. | : | |
| | : | |

# O P I N I O N

## I.  INTRODUCTION

In this adversary proceeding, Gary F. Seitz, the chapter 7 trustee ("the Trustee") of the bankruptcy estate of debtor David C. Marchese ("the Debtor"), asserts direct claims of the Debtor and derivative claims on behalf of the Debtor's real estate investment entity, Hopwood Farms LLC ("Hopwood")  --  in both contract and tort  --  against several of the Debtor's former business partners.

The Trustee alleges that Defendants Gerald Mullaney ("Mullaney"), James McCauley ("McCauley") and/or McCauley Associates Limited Partnership ("MALP"):

- breached their obligations under Hopwood's operating agreement ("the Operating Agreement"), including the covenant of good faith and fair dealing; and;

- violated their fiduciary duties as either members or managers of Hopwood.

Earlier in the litigation, on July 16, 2018, based on a motion to dismiss under Fed. R. Civ.

P. 12(b)(6) (incorporated by Fed. R. Bankr. P. 7012) that was transformed into a motion for

summary judgment, see Fed. R. Civ. P. 12(d), I dismissed the Trustee's tort claims against

Mullaney (both direct and derivative) based on the expiration of the statute of limitations.  See

(Doc. #'s 56, 62).

Subsequently, Mullaney, McCauley and MALP (collectively "the Defendants") filed

motions for summary judgment, seeking dismissal of the remaining claims.  They raise defenses

based on, inter alia, the statute of limitations, res judicata, the trustee's standing, and the

Defendants' status as managers or members of Hopwood.

For the reasons discussed below, I will grant summary judgment to McCauley and MALP

on all the Trustee's claims.  The only surviving causes of action are the Trustee's contract claims

against Mullaney (Counts I and III).

## II. PROCEDURAL HISTORY

The Debtor filed this chapter 7 bankruptcy case on May 26, 2016.

On November 5, 2012, years before the bankruptcy, the Debtor, directly and derivatively

on Hopwood's behalf, sued McCauley and MALP in Montgomery County ("the State Court

Action"), alleging breaches of contract and fiduciary duties.  The State Court Action was

answered, then terminated for lack of prosecution, then reinstated under the Trustee's control in

2016.  On July 3, 2017, the Trustee removed the State Court Action to this court, commencing

the instant adversary proceeding.

On July 25, 2017, the Trustee amended the complaint, dropping all causes of action

related to breaches and raising only avoidance causes of action drawn from the Bankruptcy

Code.  I dismissed this complaint on the motion of McCauley and MALP on November 28, 2017, but with leave to amend.

The Trustee filed the present amended complaint ("the Amended Complaint") on December 15, 2017.  The Amended Complaint dropped all avoidance causes of action, resurrected the claims for contract and fiduciary breach, and added Mullaney as a new defendant.

The Defendants filed another motion to dismiss on January 19, 2018.

I resolved the January 19, 2018  motion to dismiss in an order accompanied by a Memorandum, ("the Prior Memorandum") in which I:

- dismissed the claim for the imposition of a constructive trust, (because that is a remedy rather than a cause of action);

- treated Mullaney's statute of limitations defense to the fiduciary breach claims as a motion for summary judgment; and

- denied the remainder of the motion to dismiss.

In re Marchese, 2018 WL 3472823, at *17 (Bankr. E.D. Pa. July 16, 2018).

In treating Mullaney's statute of limitations defense as a motion for summary judgment under Fed. R. Civ. P. 56, I permitted the Trustee to submit additional evidence.  He did so, but this evidence did not raise a material factual dispute.  On August 20, 2018, I entered judgment in Mullaney's favor on the fiduciary breach claim (Count II).  (Doc. #'s 60, 61, 62).

On January 10, 2019, two (2) summary judgment motions were filed.  Mullaney filed one (1), solely on his own behalf.  ("the Mullaney Motion") (Doc. # 79).  The second motion was filed by all of the Defendants, including Mullaney ("the Defendants' Motion") (collectively "the Motions").  (Doc. # 81).  The Trustee and Defendants have traded responses and replies, the last of which was filed on February 25, 2019.  (Doc. #'s 86, 87, 88, 90).[1]

---

[1]	In his Amended Complaint, the Trustee alleges that this is a core proceeding. While that may be a questionable proposition, its accuracy is immaterial because the Trustee has consented to the entry of a

# III. FACTS

## A.  The Undisputed Facts

In my Prior Memorandum, I wove the facts alleged in the Amended Complaint into a narrative to streamline this recitation of this case.  Most of those alleged facts – at least the material ones – are now undisputed and supported by the record.

### 1.  Hopwood and the Foreclosure Action

In 2005, the Debtor, Mullaney, MALP (an entity in which McCauley is the principal), Mullaney's brother Martin, and Paul Newlin formed Hopwood in order to acquire and develop real estate. The Debtor owned a 50% interest in Hopwood.  MALP, Mullaney, and the other two individuals each owned 12.5%.  Mullaney was the manager of Hopwood.

The Debtor contributed $500,000 to fund Hopwood.  Hopwood purchased 172 Hopwood Road ("the Property") for $1,900,000, applying members' initial contributions and financing the balance of the purchase price through a note ("the Note") and mortgage ("the Mortgage") in the amount of $1,235,000 granted to Harleysville National Bank. The loan was guaranteed by all Hopwood members except MALP and was secured by the Property. The Debtor paid the monthly mortgage payments, making a total of around $200,000 in payments, which were added to his capital account balance.

---

final order by the bankruptcy court, rather than the issuance of proposed findings of fact and conclusions of law. (See Doc. # 51). The Defendants, too, have expressly consented to the entry of a final order by the bankruptcy court. (Doc. #'s 7, 52).  See generally 28 U.S.C. §157(c) (absent consent of the parties, bankruptcy court must submit proposed findings of fact and conclusions of law to the district court).

The members of Hopwood were to be compensated according to terms laid out in their Operating Agreement. If the investment made a profit, Hopwood would distribute money to members with an outstanding capital account balance. Once the capital contributions had been fully returned, additional profits would be allocated to the members according to their ownership interest. In effect, this meant that the Debtor would obtain 80% of the first million dollars in profits,[2] and 50% of all profits thereafter.

In early 2011, the Hopwood members began to struggle to make payments on the Mortgage. Their efforts to pursue additional financing proved unsuccessful. Hopwood's members also discussed the possibility of buying the Mortgage from its holder, American Acquisitions, at a discount. On August 15, 2011, MALP purchased the Mortgage for $550,000.

On September 6, 2012, MALP, now a creditor of Hopwood, filed a foreclosure action against Hopwood ("the Foreclosure Action"). Mullaney accepted service of the foreclosure complaint but did not defend the foreclosure. The Debtor, purporting to act for Hopwood, filed an answer and new matter in the Foreclosure Action on October 26, 2012. By April of 2014, the Debtor's counsel in the Foreclosure Action was permitted to withdraw, and the Debtor did not file any more pleadings on behalf of Hopwood.

On June 15, 2014, the state court granted MALP summary judgment in the Foreclosure Action after Hopwood failed to defend against MALP's summary judgment motion. MALP executed on this judgment by scheduling a sheriff's sale of the Property. On April 26, 2015, MALP purchased the Property at sheriff's sale.

---

[2]    This percentage is not exact, because there is a disputed issue of fact as to MALP's initial contribution amount. The dispute is not material to resolving the Motions. I have used rough numbers here to convey the magnitude of the parties' positions, without prejudice to their right to establish exact amounts at trial.

Meanwhile, in November 2012, while the Foreclosure Action was pending, the Debtor filed the State Court Action (later removed to this court), alleging that McCauley and/or MALP committed various business torts and contract breaches.

After the foreclosure sale, Hopwood had no assets and no likelihood of paying out the large capital account balance in favor of the Debtor.  Also, after the foreclosure sale, MALP sent Mullaney a letter releasing Mullaney from his personal guarantee of the Mortgage.

### 2.   the constructive trust in favor of the JDM Estate

While the events leading to the Hopwood foreclosure and sheriff's sale were underway, the Debtor was the target in a separate set of legal proceedings that impact this adversary proceeding.

The Debtor was the administrator of the Estate of Joseph D. Marchese ("the JDM Estate").  In March 2012, as a result of his misappropriation of funds of the JDM Estate (some of which the Debtor used to make his capital contribution to Hopwood), the state court determined that the Debtor should return $1,412,935.00 to the JDM Estate.  In September 2012, the state court held the Debtor in contempt for failing to return the funds and removed him as the administrator of the JDM Estate.  On November 5, 2014, the state court entered judgment against the Debtor in the amount of $1,766,318.34.  On July 17, 2015, the state court imposed a constructive trust over all of the Debtor's assets (including his interest in Hopwood), retroactive to April 24, 2009, in favor of the JDM Estate.[3]

On January 28, 2015, in compliance with the order imposing the constructive trust, and to purge himself of civil contempt, the Debtor executed a document which purported to assign his

---

[3]     In the Prior Memorandum, I incorrectly stated that the date of the state court constructive trust order was January 25, 2015.  Marchese, 2018 WL 3472823, at *5.

50% ownership interest in Hopwood to Gregory Phillips, the replacement administrator of the JDM Estate.

### 3. events in the bankruptcy case

The Debtor filed his chapter 7 case on May 26, 2016.  On June 10, 2016, the JDM Estate moved for relief from the automatic stay, largely on the theory that the bankruptcy estate had no interest in any of the Debtor's assets as a result of the constructive trust established by the state court prior to the bankruptcy filing. I granted the motion on July 28, 2016.

After the stay relief order was entered, the Trustee and the JDM Estate executed a stipulation ("the Stipulation"), through which the JDM Estate authorized the Trustee to administer certain assets; in return, the JDM Estate agreed to a "carve-out" for the bankruptcy estate of ten  percent (10%) of any recovery obtained by the Trustee. I approved the Stipulation by order dated October 19, 2016.

On July 3, 2017, the Trustee removed the State Court Action, commencing this adversary proceeding.

### B.  The Disputed Facts

The parties dispute certain details of the above narrative.  Some of those details are material to resolution of this case; others are not material because they relate to claims that can be resolved on other grounds.

The Trustee asserts that McCauley and MALP were to negotiate the purchase of the Property's mortgage on behalf of Hopwood, not themselves, whereas McCauley and MALP allege that the Hopwood members gave them permission to negotiate the purchase of the Mortgage, and permitted MALP to purchase the Mortgage.

7

The Trustee also alleges that Mullaney never successfully resigned and is still Hopwood's manager today. Mullaney disputes this, claiming he resigned as manager of Hopwood on February 23, 2012. (Mullaney Motion, Ex. B).[4]

The Trustee contends that MALP's filing of the foreclosure complaint against Hopwood and Mullaney's acceptance of service of the complaint, followed by Mullaney's failure to defend, was part of a secret arrangement among the Defendants. This side-deal allowed MALP to obtain the Property worth around $2,000,000 for the price it paid for the Mortgage (only $550,000). This arrangement freed Mullaney from his liability under the Note while stripping Hopwood of its sole valuable asset. The Defendants deny the existence of a side-deal.

And, finally, the Trustee alleges the Stipulation permitted him to buy the right to recover 10% of the recovery on the Debtor's causes of action, as long as he initiated suit within a certain time frame and that removal of the State Court Action satisfied that temporal requirement. The Defendants argue that the Stipulation was a temporary license that expired when the Trustee did not actually recover money during the relevant period (which has run).

## IV. SUMMARY JUDGMENT LEGAL STANDARD

In a recent decision, I described the standard for a Rule 56 motion for summary judgment as follows:

> Pursuant to Fed. R. Civ. P. 56(a), applicable in this adversary proceeding through Fed. R. Bankr. P. 7056, summary judgment must be granted to a moving party when, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. E.g., Steele v. Cicchi, 855 F.3d 494, 500 (3d Cir. 2017); In re Bath, 442 B.R. 377, 387 (Bankr. E.D. Pa. 2010); see also In re Asbestos Prods. Liab. Litig. (No. VI), 837 F.3d 231, 235-36 (3d Cir. 2016).

---

[4]    I note some tension in Mullaney's position. He resigned as manager, but seven (7) months later, he accepted service of a complaint filed against Hopwood.

On a motion for summary judgment, the court's role is not to weigh the evidence, but to determine whether there is a disputed, material fact for resolution at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). A genuine issue of material fact is one in which sufficient evidence exists that would permit a reasonable fact finder to return a verdict for the non-moving party. Id. at 248. A fact is material "if its existence or nonexistence might impact the outcome of the suit ... A dispute over a material fact is 'genuine' if nonexistence might impact the outcome of the suit ...." Betz v. Satteson, 715 Fed. Appx. 213, 215 (Nov. 16, 2017) (non precedential) (quoting Wiest v. Tyco Elecs. Corp., 812 F.3d 319, 328 (3d Cir. 2016)) (additional citation omitted).

The parties' respective burdens of proof also play a role in determining the merits of a summary judgment motion. See In re Polichuk, 506 B.R. 405, 421 (Bankr. E.D. Pa. 2014).

If the movant is the defendant or the party without the burden of proof, the movant must demonstrate the absence of a genuine issue of material fact, but the movant is not required to support the motion with affidavits or other materials that negate the opponent's claim. Rather, the movant may assert that the party with the burden of proof has not come forward with evidence to support one or more elements of its claim. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-34 (1986).

On the other hand, if the movant is the party with the burden of proof at trial, the standard is more stringent. The movant "must produce enough evidence to justify a directed verdict in its favor in order to meet its initial burden." Nat'l State Bank v. Fed. Reserve Bank of New York, 979 F.2d 1579, 1582 n.2 (3d Cir. 1992); see also In re Newman, 304 B.R. 188, 193 (Bankr. E.D. Pa. 2002).

In re Boltz-Rubinstein, 2019 WL 522493, at *4 (Bankr. E.D. Pa. 2019).

Here, the movants do not have the burden of proof.

# V. THE TRUSTEE'S REMAINING CLAIMS

Analysis of the causes of action and the parties' summary judgment arguments is complicated by a lack of precision in the Trustee's Amended Complaint and the fact that the claims are asserted against three (3) defendants who played different roles in this business drama.

To follow the arguments raised in the Motions, it is helpful to identify the claims initially

asserted by the Trustee and those that survived the Defendants' motion to dismiss the Amended

Complaint.  I have done so in the table below:

| Count | Mullaney | MALP | McCauley |
|---|---|---|---|
| **I (direct)**<br>**contract claim**<br>(breach of Hopwood's Operating Agreement) | **survived motion to dismiss**<br>(statute of limitations; Trustee has standing) | **survived motion to dismiss**<br>(Trustee has standing) | **survived motion to dismiss**<br>(Trustee has standing) |
| | | | |
| **II  (derivative)**<br>**tort**<br>breach of fiduciary duties owed to Hopwood and/or the Debtor (in his capacity as a member of Hopwood) | **dismissed**<br>(statute of limitations) | **survived motion to dismiss**<br>(Trustee has standing) | **survived motion to dismiss**<br>(Trustee has standing) |
| | | | |
| **II  (direct)**<br>**tort** | **dismissed**<br>(statute of limitations) | **survived motion to dismiss**<br>(Trustee has standing) | **survived motion to dismiss**<br>(Trustee has standing) |
| | | | |
| **III   (direct)**<br>**contract claim**<br>(implied duty of good faith and fair dealing) | **survived motion to dismiss**<br>(statute of limitations; Trustee has standing) | **survived motion to dismiss**<br>(Trustee has standing) | **survived motion to dismiss**<br>(Trustee has standing) |
| | | | |
| **IV (derivative)**<br>constructive trust | **dismissed without prejudice** to the Trustee's right to seek the imposition of a constructive trust as a remedy | **dismissed without prejudice** to the Trustee's right to seek the imposition of a constructive trust as a remedy | **dismissed without prejudice** to the Trustee's right to seek the imposition of a constructive trust as a remedy |

Based on the above, and my reading of the Amended Complaint, three (3) counts remain

at issue for summary judgment.  Counts I and III are based in contract and appear to be direct

claims of the Debtor (and now the bankruptcy estate) against all three (3) defendants.  Count II is

based in tort for breach of fiduciary duty and appears to assert both a direct and a derivative

claim on behalf of Hopwood against MALP and McCauley only (this cause of action previously having been dismissed against Mullaney).

# VI. DISCUSSION

## A.  Overview

The Trustee's theory of the case is straightforward: McCauley and MALP, with Mullaney's assistance, engaged in a scheme to strip Hopwood of its sole, valuable asset, to the detriment of Hopwood and the Debtor.  The scheme most directly injured the Debtor because he was entitled to the lion's share of any distributions Hopwood might make to its members.

While the basic fact pattern is relatively simple, the legal landscape and some subsidiary issues are not.  The Trustee asserts both business tort and contract claims.  The tort claims, in the form of breach of fiduciary duty, arise from duties that the Defendants may have as members, managers, or de facto managers of Hopwood: Was Mullaney the manager of Hopwood at relevant times?  Did McCauley or MALP assume a de facto manager status?

 To complicate things further, the Trustee asserts direct and derivative claims, which are more difficult to analyze because the Pennsylvania statute governing limited liability companies was repealed and replaced since the events that give rise to this litigation.

And, finally, the litigation commenced in state court, but was removed to federal court after the bankruptcy case was filed.  Those claims asserted by the Debtor passed into the bankruptcy estate, which is represented by the chapter 7 trustee. This occurred after a Pennsylvania state court imposed a constructive trust on all of the Debtor's assets.

The Mullaney Motion seeks judgment solely on the statute of limitations issue; the

Defendants' Motion raises nine (8) arguments.[5]

To resolve the Motions, I need not resolve each factual and legal issue.  I will grant the

Defendants' Motion as to McCauley and MALP. The claims against them will be dismissed. I am

denying the Defendants' Motion as to Mullaney. The Mullaney Motion also will be denied.

Therefore, Counts I and III against Mullaney are the only surviving causes of action.


### B.  Counts I and III against Mullaney are not Barred by the Statute of Limitations

In the Mullaney Motion, Mullaney renews his request for dismissal of the contract claims

in Counts I and III based on the statute of limitations.[6]  Mullaney's argument is based both on

what he characterizes as additional, previously unavailable, evidence and on a legal analysis.

---

[5]        The arguments are:

> (1)  the contract claims against McCauley lack merit because McCauley is not a party to the Hopwood Operating Agreement;
>
> (2)  the Trustee lacks standing to assert derivative claims;
>
> (3)  McCauley is not a member of Hopwood and did not assume managerial duties;
>
> (4)  any claim for usurpation of corporate opportunity fails because Hopwood would have been unable to undertake the opportunity;
>
> (5)  the claims against MALP are barred by the doctrine of res judicata;
>
> (6)  the derivative claim may not be asserted due the failure to make an appropriate prior demand;
>
> (7)  the derivative claim may not be asserted due the failure to obtain authorization from the disinterested members; and
>
> (8)  all of the claims are time barred.

Because the arguments raise alternative grounds for the same relief, it is not necessary to discuss them all.

## 1.  applicable legal principles

The Pennsylvania limitations period for contract claims is four (4) years.  <u>See</u> 42 Pa.C.S. §5525.

Under Pennsylvania law, a statute of limitations runs from the time a cause of action accrues. 42 Pa.C.S. §5502(a).  A cause of action "accrues when the plaintiff could have first maintained the action to a successful conclusion."  <u>Focht v. Focht</u>, 32 A.3d 668, 671 (Pa. 2011) (citing cases).  An action may be maintained to conclusion if it is "remediable in the courts, that is, when the claim is in such a condition that the courts can proceed and give judgment if the claim is established, even if the injury is not discovered until later."  51 <u>Am. Jur. 2d</u>, Limitation of Actions §127; <u>accord</u> <u>Fine v. Checcio</u>, 582 Pa. 253, 870 A.2d 850 (2005).

The commencement of the limitations period can be deferred if the discovery rule applies.  The Pennsylvania discovery rule is a "judicially created device that tolls the running of the applicable statute of limitations until the point where the complaining party knows or reasonably should know that he has been injured and that his injury has been caused by another party's conduct." <u>In re Olick</u>, 565 B.R. 767, 792 (Bankr. E.D. Pa. 2017) (quoting <u>Creghan v. Procura Mgmt., Inc.</u>, 91 F.Supp.3d 631, 649 (E.D. Pa. 2015)).

> Pennsylvania's discovery rule requires that the plaintiff use all reasonable diligence to inform himself or herself properly of the facts and circumstances upon which the right of recovery is based and to institute suit within the prescribed statutory period. To invoke the doctrine, a plaintiff bears the burden to show the inability of the injured, despite the exercise of reasonable diligence, to know that he is injured and by what cause.

<u>Marchese</u>, 2018 WL 3472823, at *7 (citations, quotations, and emphasis omitted).

---

[6]    McCauley and MALP also assert that the claims against them should be dismissed due to the expiration of the statute of limitations.  Because I am granting their motion on other grounds, it is unnecessary to reach this particular issue.

In an adversary proceeding filed by a bankruptcy trustee, 11 U.S.C. §108(a) also must be considered.  If the limitations period on an affirmative claim of a bankruptcy debtor has not expired on the date the debtor commenced the bankruptcy case, the Bankruptcy Code extends the time for the trustee to file the action (now part of the bankruptcy estate) until the later of the limitations period under applicable nonbankruptcy law or two (2) years after the order for relief. 11 U.S.C. §108(a); see In re Reading Broad., Inc., 390 B.R. 532, 552 (Bankr. E.D. Pa. 2008).

### 2.  the claims against Mullaney are not time-barred

Mullaney argues that the contract claims in Counts I and III are time-barred because the four (4) year statute of limitations expired before this bankruptcy case commenced on May 26, 2016.

In the Prior Memorandum, I held that Mullaney was a new party, added to this case for the first time in the Amended Complaint filed on December 15, 2017.  As a new party, claims against him do not relate back to the November 5, 2012 filing of the State Court Action or the January 4, 2013 state court amended complaint. See Marchese, 2018 WL 3472823, at *6 & n.11.

I also found that the Debtor was on notice of Mullaney's alleged misconduct at least by January 4, 2013, when the Debtor filed the amended complaint in the State Court Action.  I concluded that the Trustee's contract claims against Mullaney, asserted in the Amended Complaint, appeared timely, reasoning as follows:

> [T]he timeliness of the claims against Mullaney must be measured by the time period between January 4, 2013 and the commencement of the bankruptcy case on May 24, 2016, a period of approximately three (3) years and four (4) months. It follows that, as of the commencement of the bankruptcy case, the two (2) year limitations period for breach of fiduciary duty claims against Mullaney had expired, but the four (4) year breach of contract claims had not expired and, pursuant to 11 U.S.C. § 108(a), the deadline for the initiation of the contract claims was extended for two (2) additional years.

14

Marchese, 2018 WL 3472823, at *10.

In his motion, Mullaney presses his request for dismissal on statute of limitations grounds, contending that (a) new evidence suggests that the Debtor had notice much earlier than January 4, 2013; and (b) 11 U.S.C. §108(a) is inapplicable to extend the deadline for the Trustee to initiate the claim.

Upon closer examination of the record, I will push the commencement date of the limitations period back to October 26, 2012.[7]  This change is not material, however. Even based on the earlier date, Mullaney's statute of limitations defense to the contract claims in Counts I and III fails.[8]

**a.**

Mullaney argues that the Debtor had sufficient notice of the potential contract claim against him as early as September 20, 2011, a date more than four (4) years before the commencement of the Debtor's bankruptcy case (meaning that the relevant statute of limitations would have lapsed prior to the commencement of this bankruptcy case).

The new evidence Mullaney offers is an e-mail dated September 19, 2011 from McCauley to the Debtor.  The e-mail states that McCauley has "complied with the request of the

---

[7]      On October 26, 2012, the Debtor caused an Answer and New Matter to be filed on Hopwood's behalf in the Foreclosure Action.  In the New Matter, Hopwood (through the Debtor) asserted that MALP breached its fiduciary duty to Hopwood by acquiring the mortgage for itself, rather than for Hopwood, and then initiating foreclosure proceedings against Hopwood.  (See Defendants' Motion, Ex. F).  The Debtor's foreclosure defense pleading on behalf of Hopwood demonstrates that he was aware that MALP purchased the mortgage, intended to foreclose on the Property, and that Mullaney, Hopwood's manager, appeared to be doing nothing to protect Hopwood. By the time of this filing, there were enough indicia of potential wrongdoing to put the Debtor on notice of his potential claims against Mullaney.

[8] The difference between October 26, 2012 and January 4, 2013 does not change the outcome.  Both dates are less than the four (4) years before the commencement of the Debtor's bankruptcy case on May 26, 2016.

Hopwood partners by purchasing the loan/note from American Acquisition." (Mullaney Motion, Ex A).

This new evidence shows that McCauley disclosed MALP's purchase of the Mortgage, and that the Debtor knew about it on September 20, 2011. This evidence does not show, however, that the Debtor was on sufficient notice of McCauley and MALP's alleged unlawful scheme or Mullaney's alleged involvement sufficient to warrant commencement of the limitations period on the date of the e-mail.

The mere fact that MALP purchased the Mortgage, by itself, was not necessarily cause for alarm. While the original business plan was for Hopwood to buy back the Mortgage at a discount, it is plausible that MALP purchased the mortgage because a suitable deal between Hopwood and American Acquisitions could not be struck and the next best alternative was for an insider (and presumably friendly) creditor, i.e., MALP, to purchase the Mortgage. Although MALP turned out to be a hostile creditor, its alleged intent to self-deal at Hopwood's expense would not necessarily have been apparent to the Debtor simply because MALP purchased the Mortgage. Further, nothing in the September 19, 2011 e-mail implicates Mullaney in what would later turn out to be (from the Trustee's perspective) McCauley and MALP's machinations.

Consequently, on the present record, where inferences must be drawn in favor of the non-moving party, I cannot find as an undisputed fact that the Debtor was on notice of Mullaney's involvement in the alleged scheme as of September 20, 2011. This leaves the limitations period beginning to run on October 26, 2012, less than four (4) years before the commencement of the bankruptcy case.

**b.**

Mullaney also contends that 11 U.S.C. §108(a) is inapplicable to extend the limitations period because the claims asserted on behalf of the bankruptcy estate were not estate property as of the commencement of the case.  Mullaney posits that the claims belonged solely to the JDM Estate, a non-debtor, due to the existence of the state court imposed constructive trust.  If Mullaney's premise is correct -- i.e., §108(a) does not apply -- the statute of limitations commenced on October 26, 2012 and expired on October 25, 2016, prior to the December 15, 2017 filing of the Amended Complaint (which added Mullaney as a defendant).

Considering the undisputed fact that the state court imposed a constructive trust in favor of the JDM Estate on the Debtor's assets on July 17, 2015, the relevant questions are: (a) what property interest, if any, came into the bankruptcy estate; and (b) were those interests sufficient to permit the Trustee to invoke 11 U.S.C. §108(a)?

I have not found any reported opinions directly addressing whether a trustee may invoke §108(a) in connection with a debtor's pre-petition cause of action impressed with a constructive trust. Nonetheless, I conclude that Mullaney's position is incorrect based on the principles expressed in 11 U.S.C. §541(d) and reported decisions discussing that Code section.

11 U.S.C. §541(a) provides that, subject to certain exceptions, the bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case."  This definition is broad enough to include interests in causes of action.  In re Columbia Gas Systems, Inc., 997 F.2d 1039, 1054 (3d Cir.1993).

11 U.S.C. §541(d) provides that:

> property in which the debtor holds as of the commencement of the case, only legal title and not an equitable interest  .  .  .   becomes property of the estate  .  .  . only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

The Court of Appeals has explained the relationship between 11 U.S.C. §541(a) and

§541 (d) as follows:

> Section 541(a)(1) is thus broad enough to capture into the estate funds that are to
> be held as trust funds by the debtor in possession. However, section 541(d)
> clarifies that property in which the debtor holds only legal title, and does not hold
> an equitable interest, such as trust funds, is included in the bankrupt's estate only
> to the extent of the debtor's legal title to the property and not to the extent of any
> interest in the property that the debtor does not hold.

Universal Bonding Ins. Co. v. Gittens & Sprinkle Enterprises, Inc., 960 F.2d 366, 371 (3d Cir.

1992).

In Columbia Gas, the Third Circuit held that the §541(d) exclusion from the bankruptcy

estate encompasses the beneficial interest in property held in both express and constructive

trusts.  997 F.2d at 1054.; see also In re Bake-Line Grp., LLC, 359 B.R. 566, 571–72 (Bankr. D.

Del. 2007).  However, by its own terms, §541(d) makes clear that legal title to property held in

constructive trust passes to the bankruptcy estate upon the commencement of a bankruptcy case.

See Gittens & Sprinkle, 960 F.2d at 371; In re Contractor Tech., Ltd., 343 B.R. 573, 581–82

(Bankr. S.D. Tex. 2006), aff'd sub nom., In Matter of Contractor Tech. Ltd., 229 F. App'x 294

(5th Cir. 2007) (nonprecedential).[9]

Stated slightly different, the property subject to the constructive trust comes into the

bankruptcy estate **subject to the beneficial interests of the trust beneficiaries**.  See Gittens &

Sprinkle, 960 F.2d at 371 (citing In re Glover Const. Co., 30 B.R. 873, 883 (Bankr. W.D. Ky.

1983)); In re Brockway Pressed Metals, Inc., 363 B.R. 431, 453–54 (Bankr. W.D. Pa. 2007),

aff'd, 304 F.App'x 114 (3d Cir. 2008) (nonprecedential); In re Mishkin, 58 B.R. 880, 881–82

---

[9]    Passages in some reported decisions suggest in absolute terms that property subject to a
constructive trust is not property of the bankruptcy estate.  See In re Bake-Line Grp., LLC, 359 B.R. 566,
571–72 (Bankr. D. Del. 2007); In re Kiesewetter, 337 B.R. 75, 78 (Bankr. W.D. Pa. 2006); In re
Giberson, 260 B.R. 78, 81–82 (Bankr. D.N.J. 2001).  In my view, those statements are overbroad and
cannot be squared with the text of 11 U.S.C. §§541(a) and (d).

(Bankr. S.D.N.Y. 1986); see also Yohe v. Yohe, 353 A.2d 417, 421 (Pa. 1976) (individual

subject to a constructive trust is "holding title to property… subject to an equitable duty to

convey it to another").

Thus, as of the commencement of this case, the bankruptcy estate retained legal title to

the Debtor's assets, including the unfiled contract-based claim against Mullaney.  And, the

Trustee had the right to pursue that claim on the date of the filing of the petition because the four

(4) year statute of limitations had not yet expired.  As a result, when the bankruptcy estate was

created, it included the causes of action against Mullaney and the two (2) year extension of the

limitations period provided by 11 U.S.C. §108(a) took effect.

Of course, it would make no sense for the Trustee to pursue the claim against Mullaney

only to turn over the entire recovery to the JDM Estate.  Without any benefit to the bankruptcy

estate, the Trustee would abandon the estate's interest in the property.  See 11 U.S.C. §554.

Instead, the Trustee and the JDM Estate entered into a carve-out agreement which allowed the

bankruptcy estate to retain some of the benefits of any recovery on the claim and caused the

Trustee to initiate an action against Mullaney within the two (2) year extended period provided

by 11 U.S.C. §108(a).

At bottom, the fact that the carve-out agreement occurred after the expiration of the

Pennsylvania four (4) year statute of limitations is irrelevant. The potential cause of action

against Mullaney was property of the estate. The carve-out did nothing more than convince the

Trustee that it was in the best interest of the bankruptcy estate to pursue that pre-petition claim,

rather than abandoning the asset pursuant to 11 U.S.C. §554.   The Trustee had the right to bring

the action pursuant to 11 U.S.C. §108(a) and he did so before the §108(a) deadline expired.

Accordingly, the claims were timely filed against Mullaney and his motion for summary

judgment on that basis will be denied.

### C.  The Count II (Derivative) Claim Against MALP is Precluded by <u>Res Judicata</u>

### 1. introduction

MALP argues that all remaining claims against it are barred by the doctrine of <u>res judicata</u>.[10]

MALP bases this argument on two undisputed facts:

- the Debtor, purporting to act for Hopwood, defended the Foreclosure Action by filing an answer and new matter and asserting that MALP violated fiduciary and contractual obligations as Manager of Hopwood by acquiring the Mortgage for itself, rather than for Hopwood, and by initiating foreclosure proceedings;

- MALP was granted summary judgment in the Foreclosure Action.

For the reasons explained below, I conclude that the doctrine of <u>res judicata</u> applies.  I will grant summary judgment in favor of MALP on the Trustee's derivative tort claim.

### 2. general legal principles

 <u>Res judicata</u>, also referred to as claim preclusion, "acts as a bar to relitigation of an adjudicated claim between parties and those in privity with them."  <u>Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc.</u>, 292 F.3d 384, 392 (3d Cir. 2002) (citing <u>CoreStates Bank, N.A. v. Huls Am., Inc.</u>, 176 F.3d 187, 194 (3d Cir.1999)).  Under Pennsylvania law,[11]

---

[10]     Only MALP requested summary judgment based on <u>res judicata</u>.  (<u>See</u> Defendants' Memorandum of Law at 15) (Doc. # 88).  Therefore, I need not consider the extent to which any other party that may have been in privity with MALP may invoke the defense.  <u>See generally</u> <u>Taylor v. Sturgell</u>, 128 S. Ct. 2161, 2173 (2008); <u>Nationwide Mut. Fire Ins. Co. v. George v. Hamilton, Inc.</u>, 571 F.3d 299, 311 (3d Cir. 2009); <u>Greenway Ctr. Inc. v. Essex Ins. Co.</u>, 475 F.3d 139, 149 (3d Cir. 2007); <u>First Options of Chicago, Inc. v. Kaplan</u>, 913 F. Supp. 377, 383 (E.D. Pa. 1996); <u>In re Mondelblatt</u>, 350 B.R. 1, 8 (Bankr. E.D. Pa. 2006).

[11]     I cite to Pennsylvania law because when a prior case has been adjudicated in a state court, federal courts are required by 28 U.S.C. § 1738 to give full faith and credit to the state judgment and apply the same preclusion rules as would the courts of that state.  <u>See, e.g.</u>, <u>Edmundson v. Borough of Kennett</u>

when the doctrine is applicable, the prior final judgment on the merits of an action precludes the parties or their privies from relitigating claims that were or could have been raised in that prior action.[12]

The doctrine also encompasses and precludes relitigation of **defenses** that were or could have been raised in a prior action later raised as an affirmative claim in a subsequent proceeding.[13]

The four (4) conditions that must be satisfied for res judicata to apply are:

> (1) identity of the issues;

> (2) identity of causes of action;

> (3) identity of persons and parties to the action; and

> (4) identity of the quality or capacity of the parties suing or sued.

E.g., Stevenson, 40 A.3d at 1228 (Pa. 2012); In re Wilkinsburg Taxpayers, 200 A.3d at 640.

---

Square, 4 F.3d 186, 189 (3d Cir. 1993); Randall, 358 B.R. at 164; In re Vitanza, 1998 WL 808629, at *10 n.24 (Bankr. E.D. Pa. Nov. 13, 1998).

[12]     In re Stevenson, 40 A.3d 1212, 1222 (Pa. 2012); In re Wilkinsburg Taxpayers & Residents Interest in Green St. Park Sale to a Private Developer & Other Park-Sys. Conditions, 200 A.3d 634, 640 (Pa. Commw. Ct. 2018); Vacation Charters, Ltd. v. Textron Fin. Corp., 2016 WL 354094, at *11 (M.D. Pa. Jan. 28, 2016); Williams v. Philadelphia Hous. Auth., 1996 WL 144430, at *3 (E.D. Pa. Mar. 29, 1996).

[13]     See J.G. Wentworth & Company, Inc., 761 A.2d 159, 162 (Pa. Super. Ct. 2000); In re Main, Inc., 1999 WL 689715, at *3 (E.D. Pa. Sept. 3, 1999); accord Wilkinsburg Taxpayers 200 A.3d at 640; Stuart v. Decision One Mortgage Company, LLC, 975 A.2d 1151, 1154 (Pa. Super. 2009); Vacation Charters, 2016 WL 354094, at *11; Williams, 1996 WL 144430, at *3; In re Randall, 358 B.R. 145, 166 (Bankr. E.D. Pa. 2006).

### 3.   the unsuccessful New Matter defenses raised in the Foreclosure Action

MALP's <u>res judicata</u> argument is grounded in the New Matter defenses the Debtor purportedly asserted on behalf of Hopwood in the Foreclosure Action (now brought by the Trustee as an affirmative claim).

In its New Matter, Hopwood asserted that MALP violated its "fiduciary and contractual obligations as Manager of [Hopwood] by acquiring the Mortgage for itself, rather than for [Hopwood], and by initiating foreclosure proceedings." (Defendant's Motion, Ex F. at ¶19). Hopwood's reference to both "fiduciary and contractual" obligations is the foundation of MALP's <u>res judicata</u> argument because MALP was granted summary judgment in the Foreclosure Action. In other words, the breach of fiduciary duty and contractual defenses were asserted in state court, but were unsuccessful.

To determine whether the New Matter defense raised by Hopwood in state court warrants application of <u>res judicata</u>, I must determine whether the assertion that MALP breached its fiduciary duty and contractual obligation is a cognizable equitable defense to foreclosure under Pennsylvania law. If this defense was indeed viable, the issue may not be relitigated on behalf of Hopwood in this court.

### 4.   the limited scope of permissible defenses in Pennsylvania foreclosure actions

To reiterate, <u>res judicata</u> only bars the litigation of claims that were or could have been raised in a prior proceeding. <u>In re Apaydin</u>, 201 B.R. 716, 721 (Bankr. E.D. Pa. 1996); <u>accord</u> <u>In re Cooley</u>, 365 B.R. 464, 474 (Bankr. E.D. Pa. 2007). This principle is significant because Pennsylvania procedural law restricts the subject matter of claims and defenses that may be raised by a mortgage foreclosure defendant. If the defense that MALP breached its fiduciary and contractual duties is not a viable foreclosure defense, then the <u>res judicata</u> arguments fails.

A fulsome discussion of the nature of foreclosure actions in Pennsylvania and the limited

scope of the permissible defenses and counterclaims may be found in Judge Fox's decision in In

re Randall, 358 B.R. 145 (Bankr. E.D. Pa. 2006).  The key points are:

- an action in mortgage foreclosure is a discrete form of a civil action under the Pennsylvania Rules of Civil Procedure;

- foreclosure is strictly an in rem proceeding whose purpose is to determine if the plaintiff is entitled to subject the mortgaged property to judicial sale, not the entry of a judgment for money damages;

- Pa. R. Civ. P. 1147 states that a foreclosure complaint requires only averments regarding the identities of the parties, a description of the real property subject to the mortgage, the existence of a default, an itemization of the amount due, and a demand for judgment;

- in response to a mortgage foreclosure complaint, defendants may deny the averments and assert affirmative defenses and counterclaims;

- the only permissible affirmative defenses are those that question the validity of the mortgage or the plaintiff's right to subject the property to a judicial sale or counterclaims that arise from the same transaction or occurrence or series of transactions or occurrences from which the plaintiff's cause of action arose, see Pa. R. Civ. P. 1148; see also Federal Land Bank of Baltimore v. Fetner, 410 A.2d 344, 347 (Pa. Super. Ct. 1979) (the only permitted counterclaims in a foreclosure must be a "part of or incident to the creation of the mortgage itself");

- consequently, defenses and counterclaims that give rise to money damages pursuant to consumer protection statutes such as the Truth-in-Lending Act, 15 U.S.C. §§1601 et seq., are not cognizable as defenses or counterclaims in a mortgage foreclosure action, see Green Tree Consumer Disc. Co. v. Newton, 909 A.2d 811, 815–16 (Pa. Super. Ct. 2006), and therefore, res judicata does not preclude the foreclosure defendant from later asserting such claims affirmatively or otherwise in a subsequent legal proceeding.

Randall, 358 B.R. at 156–58, 166.[14]

The fiduciary and contractual breaches asserted in Hopwood's New Matter response to

the Foreclosure Action derive from the Hopwood Operating Agreement, not from the mortgage

---

[14]     There are numerous reported decisions that state and apply these principles, including Green Tree Consumer Disc. Co. v. Newton, 909 A.2d 811, 814-16 (Pa. Super. Ct. 2006); Fleet Real Estate Funding Corp. v. Smith, 530 A.2d 919, 925 (Pa. Super. Ct. 1987); New York Guardian Mortgage Corp. v. Dietzel, 524 A.2d 951, 953 (Pa. Super. Ct. 1987); Cooley, 365 B.R. at 474; Apaydin, 201 B.R. at 721.

and loan transaction that was the subject of the complaint. Therefore, at first blush, the defense

appears to be procedurally impermissible.

However, the limited defenses and counterclaims that may be asserted in a mortgage

foreclosure action have been expanded in one (1) respect by a judicial gloss on the Pennsylvania

Rules of Civil Procedure. At the intermediate appellate level, the Pennsylvania Superior Court

has recognized the existence of equitable defenses to foreclosure. Com. Sch. Employee's Ret.

Fund v. Terrell, 582 A.2d 367, 368 (Pa. Super. Ct. 1990) (citing Union National Bank of Little

Rock v. Cobbs, 567 A.2d 719 (Pa. Super. Ct. 1989)); Fleet Real Estate Funding Corp. v. Smith,

530 A.2d 919 (Pa. Super. Ct. 1987)); see also Bank of New York Mellon for Certificate Holders

of CWALT, Inc., Alternative Loan Tr. 2007-HY6 Mortg. Pass-through Certificates Series 2007-

HY6 v. Brooks, 169 A.3d 667, 672 (Pa. Super. Ct. 2017).

These cases hold that a mortgagee's failure to comply with the forbearance obligations it

undertook under federal law, when it obtained government-backed mortgage insurance in

connection with the subject mortgage loan, may be asserted as an equitable defense to

foreclosure. In other words, if the facts so dictate, Pennsylvania courts will exercise their

equitable power to defer a mortgagee's right to realize its collateral following a borrower's

default until the mortgagor has the opportunity to pursue potential alternatives to foreclosure and

the loss of his or her property.

The equitable defense raised by Hopwood in the state court is analogous to the mortgage

servicing defenses recognized by Pennsylvania courts. Essentially, Hopwood asserted that it

delegated to MALP the authority to negotiate an alternative to foreclosure, but instead of doing

so, MALP corruptly seized the opportunity to obtain the mortgage in order to foreclose on

Hopwood's only valuable asset. In other words, Hopwood's defense alleged that allowing

MALP to foreclosure would be inequitable. If proven, the asserted facts potentially could have

24

convinced a Pennsylvania court to grant Hopwood some relief: perhaps by deferring MALP's access to the foreclosure remedy while Hopwood continued its efforts to raise capital to pay off the mortgage loan or by consolidating for trial the Foreclosure Action with a separate, Hopwood affirmative action for damages.

I therefore find the derivative claim now raised in Count II of the Trustee's Amended Complaint was a cognizable defense in the Foreclosure Action.  Its lack of success  -- the entry of the foreclosure judgment entered in MALP's favor --  precludes further litigation of those defenses. Accordingly, the Trustee's attempt to assert those same defenses as affirmative claims against MALP in Count II is precluded by the res judicata doctrine.[15]

### D.  The Count II (Direct) Claim Against MALP and McCauley Based on de facto Manager Liability Fails as a Matter of Law

#### 1.  duties of LLC managers and members

The 1994 LLC Act, 15 Pa.C.S. §8901 et seq (repealed eff. Feb. 21, 2017) governs the substantive duties of LLC members and managers.[16]

In a manager-managed LLC, non-managing members have "no duties to the company or other members solely by reason of acting in their capacity as a member."  15 Pa.C.S. §8943(b)(2). Managers, on the other hand, are imposed with a set of fiduciary duties imported

---

[15]     It is less obvious whether the Trustee's non-derivative claims (to which the bankruptcy estate succeeded from the Debtor, see 11 U.S.C. §541(a)), are identical to the defenses raised in the Foreclosure Action. While there is considerable overlap in the theories underlying the claims, there also are some differences.  However, it is unnecessary to reach this issue because summary judgment will be entered in favor of MALP on the Trustee's non-derivative claims on other grounds.  See Parts VI.D and E., infra.

[16]     I refer to the repealed statute because the conduct giving rise to the claims asserted in this adversary proceeding occurred before the 2016 effective date of the Revised Uniform Limited Liability Company Act, 15 Pa. C.S. § 8811 et seq.  In the Prior Memorandum, I explained that the substantive rights of the parties are governed by the prior Limited Liability Company Act of 1994, while the procedural aspects of the claims are governed by the 2016 Act.  See Marchese, 2018 WL 3472823, at *11.

from corporate law on director liability.  15 Pa.C.S. §8943(b)(1) (citing 15 Pa.C.S. §§ 1711-1717) (director duties apply to LLC managers).

A corporate director,

> shall stand in a fiduciary relation to the corporation and shall perform his duties as a director, including his duties as a member of any committee of the board upon which he may serve, in good faith, in a manner he reasonably believes to be in the best interests of the corporation and with such care, including reasonable inquiry, skill and diligence, as a person of ordinary prudence would use under similar circumstances.

15 Pa.C.S. §1712(a).

An LLC manager is "a person selected under section 8941(b) (relating to management) to manage a limited liability company."  15 Pa.C.S. §8903(a) (repealed eff. Feb. 21, 2017).  Section 8941(b) states that managers are appointed "in the manner prescribed by the operating agreement."  15 Pa.C.S. §8941(c) (repealed eff. Feb. 21, 2017).

## 2.   there is no legal authority for <u>de facto</u> manager liability

Hopwood's Operating Agreement initially appointed Mullaney as manager "from the date of his election until the next annual meeting and until his successor shall have been elected, unless he shall sooner resign or be removed."  (Operating Agreement ¶10.4).  The Operating Agreement also provides that members have the right to remove a manager, appoint a new manager, or fill a vacancy by majority vote.  (Operating Agreement ¶¶ 10.5, 10.6).

Neither McCauley nor MALP ever formally assumed the title or duties of manager.  They can only be liable for breaches of their fiduciary duties if <u>de facto</u> managerial status is imposed under the theory that they acted as Hopwood's managers.

There is no case law under the 1994 LLC Act dealing with the issue of <u>de facto</u> managers.  Courts elsewhere disapprove of the concept.

Under New York law, for example, individuals who are not formal managers of an LLC cannot be sued for managerial fiduciary breaches.  New York law treats such liability mechanically: an individual who is not actually a manager does not owe managerial fiduciary duties.  The <u>de facto</u> manager theory has been explicitly rejected.

> The Trustee apparently contends that Rabbi Steinwurzel's participation in the management and his exercise of authority on behalf of the Debtor turned him into a *de facto* Manager with the attendant fiduciary duties and liabilities…Under the analogous laws governing corporate liability, the *de facto* doctrine is a legal fiction designed to protect third parties who rely, in good faith, on the acts of a *de facto* officer. <u>Steinfeld v. Richard A. Eisner & Co. (In re General Vision Servs., Inc.)</u>, 423 B.R. 790, 794 (S.D.N.Y. 2010). However, "as between the *de facto* director and the corporation, a *de facto* director is not a director in law or fact." <u>Stile v. Antico</u>, 707 N.Y.S.2d 227, 228 (N.Y.App.Div.2000); <u>accord</u> <u>General Vision Servs.</u>, 423 B.R. at 794. The Trustee stands in the shoes of an LLC suing a *de facto* manager, and has no claim against Rabbi Steinwurzel *qua* Manager because he was never an actual Manager. <u>Cf. General Vision Servs.</u>, 423 B .R. at 794 ("Since appellant's claim is a derivative action asserted on behalf of GVS, appellees cannot be sued in their capacity as corporate directors, when they were never actual officers or directors of GVS.").

<u>In re Kollel Mateh Efraim, LLC</u>, 2011 WL 1629665, at *5 (Bankr. S.D.N.Y. 2011) (some citations omitted).

Under Delaware law, even taking on managerial duties is not enough; only a manager formally chosen in accord with statute and the company's operating agreement has a manager's fiduciary duties.

> The manager of an LLC is not simply a person who assumes management responsibilities. Rather, under Delaware law, the 'manager' must have been 'named as a manager ... in a limited liability company agreement or similar instrument under which the limited liability company is formed.' Del.Code Ann. tit. 6, § 18–101(10).

<u>N. Am. Steel Connection, Inc. v. Watson Metal Prod. Corp.</u>, 515 F. App'x 176, 182 (3d Cir. 2013) (nonprecedential).

The Trustee cites no authority that would impose managerial liability on a <u>de facto</u> manager of an LLC.  There may be other ways to recover from individuals who, like McCauley

and MALP, purportedly act on behalf of, yet against the best interests of, an LLC.[17] But the

claim as brought by the Trustee does not state such causes of action and is, therefore, legally

insufficient.

In the absence of a formal position as a Hopwood manager, neither MALP nor McCauley

can be liable for breach of managerial fiduciary duty, whether asserted derivatively on behalf of

Hopwood or directly by a Hopwood member.  Therefore, MALP and McCauley are entitled to

summary judgment on Count II of the Amended Complaint.


### E.  Counts I and III: MALP and McCauley
### Are Entitled to Summary Judgment

#### 1.  applicable legal standards

The remaining claims against MALP and McCauley are the direct claims for breach of

contract (Count I) and breach of the implied contractual covenant of good faith and fair dealing

(Count III).

To establish a breach of contract claim, the Trustee must show "(1) the existence of a

contract, (2) a breach of one or more of the duties imposed by the contract, and (3) damages."

Ware v. Rodale Press, Inc., 322 F.3d 218, 225 (3d Cir. 2003) (quoting CoreStates Bank, N.A. v.

Cutillo, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)); Hart v. Arnold, 884 A.2d 316, 332 (Pa.

Super. Ct. 2005).  An LLC operating agreement is interpreted as a contract.  Hadeed v.

Advanced Vascular Res. of Johnstown, LLC, 2017 WL 4998663, at *11 (W.D. Pa. Oct. 30,

2017).

---

[17]     See, e.g., Wicks v. Milzoco Builders, Inc., 470 A.2d 86, 90 (Pa. 1983); B & R Resources, LLC v.
Department of Environmental Protection, 180 A.3d 812, 818 (Pa. Cmwlth. Ct. 2018) (participation in
wrongful acts of LLC can be a basis for personal liability).

Pennsylvania law also provides, generally, that an implied covenant of good faith and fair dealing exists in all contracts.  Restatement (Second) of Contracts §205; Ash v. Cont'l Ins. Co., 593 Pa. 523, 532 (2007).[18]  The good faith obligation "may be implied to allow enforcement of the contract terms in a manner that is consistent with the parties' reasonable expectations." Agrecycle, Inc. v. City of Pittsburgh, 783 A.2d 863, 867 (Pa. Commw. Ct. 2001) (citation omitted).  When parties are given discretion under a contract, they must exercise their discretion in a reasonable way.  USX Corp. v. Prime Leasing Inc., 988 F.2d 433, 438 (3d Cir. 1993); Slamon v. Carrizo (Marcellus) LLC, 2017 WL 3877856, at *9 (M.D. Pa. Sept. 5, 2017).

An allegation of breach of this covenant is a supplement to a standard breach of contract action, not its own cause of action.  Zaloga v. Provident Life & Acc. Ins. Co. of Am., 671 F. Supp. 2d 623, 631 (M.D. Pa. 2009).  The claim arises out of contract, not tort.  Ash, 593 Pa. at 533.  A breach of the covenant cannot displace duties enumerated in the contract.  Montanez v. HSBC Mortg. Corp., 876 F.Supp.2d 504, 513 (E.D. Pa. 2012).  Also, as in the law of contracts, only contracting parties can be liable for breaches of the covenant of good faith and fair dealing. See QVC, Inc. v. Resultly, LLC, 159 F. Supp. 3d 576, 583–84 (E.D. Pa. 2016) (quoting Electron Energy Corp. v. Short, 597 A.2d 175, 177 (Pa. Super. Ct. 1991) ("It is fundamental contract law that one cannot be liable for a breach of contract unless one is a party to that contract.")).

If a party has breached a contractual duty, be it explicit or implicit,  a plaintiff can recover damages.  See, e.g., Helpin v. Trustees of Univ. of Pennsylvania, 10 A.3d 267, 270 (Pa. 2010); Ferrer v. Trustees of Univ. of Pennsylvania, 825 A.2d 591, 610 (Pa. 2002).

---

[18]     But cf. Hanaway v. Parkesburg Group, LP, 168 A.3d 146 (Pa. 2017) (implied covenant of good faith and fair dealing did not apply to general partner's alleged breach of limited partnership agreement that was created pursuant to the former version of Pennsylvania Revised Uniform Limited Partnership Act).

## 2.  the parties' positions

The Defendants assert that the contract claims against McCauley must be dismissed because he is not a party to the Operating Agreement.  The Trustee disagrees, arguing that "MALP was not a member of Hopwood. McCauley, individually and 'trading as' McCauley Associates, was a member of Hopwood."  (Response to Def. MSJ at 6).  The Trustee alleges that this is an undisputed fact; the Defendants disagree.

The presence of a disputed material fact would normally dictate denial of summary judgment and reserving the issue for trial.  However, a factual dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  If there is no genuine dispute about the material fact, granting summary judgment may be appropriate despite the parties' disagreement.  When evaluating whether a genuine dispute exists, all reasonable inferences must be drawn in favor of the non-movant.  Troy Chemical Corp. v. Teamsters Union Local No. 408, 37 F.3d 123, 126 (3rd Cir. 1994).

The Trustee asserts that he offers evidence that McCauley is a member of Hopwood that could convince a reasonable jury, which is all that is necessary to send this dispute to trial.  I disagree.

## 3.  MALP was the Hopwood member; McCauley was not

The name of the relevant Hopwood member stated in the recital section of the Operating Agreement is "McCauley Associates Partnership."  McCauley signed the Operating Agreement as partner of "McCauley Associates Partnership."  The attached Schedule A, which allocates the members' profit percentages, lists Mullaney, his brother Martin, the Debtor, and Paul Newlin by their individual names.  It allocates 12.5% to "McCaulty [sic] Assocs."

30

Certainly, there is a minor mismatch here in the names of the entities.  The correct name of MALP is "McCauley Associates Limited Partnership," but the Operating Agreement was signed in the name of "McCauley Associates Partnership."  Nothing in this writing suggests that McCauley individually was a member of Hopwood.

The Trustee points to McCauley and MALP's Answer and New Matter to the State Court Action.  This pleading, filed by McCauley and MALP jointly, describes MALP as "James McCauley t/a McCauley Associates Limited Partnership."  (Response to Def. MSJ, Ex. 2).  The Trustee alleges that this shows that McCauley rather than MALP was not a member of Hopwood.  I disagree.  The very same pleading lists McCauley individually and separately.  It is unreasonable to believe that McCauley's description of MALP as a related entity – particularly when set against the listing of McCauley individually – indicates that McCauley was the Hopwood member.

In fact, we can assume that the description of MALP (as an outreach of McCauley) was meant to comply with the – frankly, confusing – procedural requirements of the Pennsylvania Rules of Civil Procedure on suits by and against partnerships.  One rule provides that partnerships suing affirmatively must do so "in the names of the then partners trading in the firm name, in the following manner: "A, B and C trading as X & Co."  Pa. R. Civ. P. 2127(a).  Another rule provides that actions against a partnership may be brought against the partnership "in the manner designated by Rule 2127(a), or against the partnership in its firm name."  Pa. R. Civ. P. 2128(a).  For those rules only, a "partner" is defined as "only a general partner or a limited partner who has become subject to the liability of a general partner."  Pa. R. Civ. P. 2126.

MALP may well have filed an answer and new matter using the 'trading as' description in an effort to comply with the above rules.  Even if it filed only defensively, MALP was at

liberty to use the 'trading as' designation on its pleadings without the legal effect that the Trustee claims.[19]

If the Trustee asserted that there was a disputed issue of material fact as to whether "McCauley Associates Limited Partnership" or "McCauley Associates Partnership" was a member, I might find the factual dispute a genuine issue precluding summary judgment. That is not what the Trustee argues, however.[20] The Trustee alleges that McCauley individually is a member because the name on the Operating Agreement is not identical to MALP.

The Operating Agreement clearly expresses that that the founders of Hopwood intended its members to be individuals, **except for McCauley**, whose interest in Hopwood was held in some kind of partnership. The Operating Agreement does not make McCauley personally a member despite the Trustee's position that the name mismatch suggests otherwise.

I also conclude that there is no genuine factual dispute regarding whether McCauley individually signed the Operating Agreement. He did not. No reasonable jury could find that MALP was not a member, or that McCauley himself was a member, given the evidence in the record and the law regarding "trading as" names.

---

[19]    It is strange that Pennsylvania's Rules force a partnership to 'trade as' its general partner when filing affirmative claims, but allow a partnership to proceed defensively in its firm name alone. When a partnership wins an affirmative claim, that recovery will be split according to the partnership's own terms and will not go to the general partner except according to those terms. When a partnership defends itself, any liability imposed will be passed on fully to the general partners. That is, the Pennsylvania Rules require a general partner to provide his name when he cannot obtain recovery, but do not require him to provide his name when he might incur liability; this seems backwards.

[20]    It is obvious why the Trustee does not argue this; "McCauley Associates Partnership," if it exists, is not a defendant. The Trustee could not begin a suit against the corporation, because any such claims likely would be barred by the statute of limitations.

### 4.   summary judgment in favor of McCauley

Based on the undisputed fact that MALP, not McCauley, was the member of Hopwood, I conclude that McCauley is entitled to summary judgment on the Count I and III contract claims. A defendant who is not a party to a contract cannot be held liable for breach of contract. E.g., Garcia-Valentie v. McKibbin, 2007 WL 2022067, at *3 (E.D. Pa. July 9, 2007) (citing Viso v. Werner, 471 Pa. 42, 369 A.2d 1185 (Pa. 1977) and Electron Energy Corp. v. Short, 408 Pa.Super. 563, 597 A.2d 175, 177 (Pa. Super. Ct. 1991)).

### 5.   summary judgment in favor of MALP

There is an argument that MALP breached a contractual duty as a member of Hopwood and signatory to the Operating Agreement. The shortfall in the Trustee's case is that he did not identify any contractual duties either breached by MALP (Count I) or exercised in an abusive or unreasonable fashion (Count III).

Under the 1994 LLC Act, the duties of a member of a manager-managed LLC are grounded in the operating agreement.  See 15 Pa. C.S. §8943(b)(2) ("A member who is not a manager shall have no duties to the company or to the other members solely by reasons of acting in his capacity as a member").  The Hopwood Operating Agreement imposes no duties on its members, other than answering a capital call if one is made, (and there is no dispute that there were no capital calls in this case).[21]  (See Operating Agreement §5.7).

The absence of breached contractual duties and my prior conclusion that MALP was not a de facto manager (which potentially could have imposed various contractual duties on MALP)

---

[21]      Indeed, the failure of Hopwood's manager to make a capital call appears to be part of the Trustee's theory of liability against Mullaney.

enable me to conclude that the Trustee has no claim against MALP for a breach of an express

contractual obligation or the implied duty of good faith and fair dealing.

## VII.  CONCLUSION

### A.  Summary

For the reasons discussed, the Motions will be granted in part and denied in part.

Summary judgment will be granted to MALP and McCauley on all of the Trustee's

claims.  The surviving claims are the Trustee's Count I and Count III direct contract claims

against Mullaney.

The chart below summarizes the rulings set out in this opinion.

| Count | Mullaney | MALP | McCauley |
|---|---|---|---|
| **I  (direct)**<br>**contract claim**<br>(breach of Hopwood's Operating Agreement) | **SUMMARY JUDGMENT DENIED** | **SUMMARY JUDGMENT GRANTED**<br><br>(not a _de facto_ manager of Hopwood)<br>(no contractual member duties identified) | **SUMMARY JUDGMENT GRANTED**<br><br>(not a Hopwood member; no contractual duty) |
| | | | |
| **II  (derivative)**<br>**tort**<br>breach of fiduciary duties owed to Hopwood and/or the Debtor (in his capacity as a member of Hopwood) | **PREVIOUSLY DISMISSED**<br><br>(statute of limitations) | **SUMMARY JUDGMENT GRANTED**<br>(_res judicata_) | **SUMMARY JUDGMENT GRANTED**<br>(not a _de facto_ manager of Hopwood) |
| | | | |
| **II  (direct)**<br>**tort** | **PREVIOUSLY DISMISSED** | **SUMMARY JUDGMENT GRANTED** | **SUMMARY JUDGMENT GRANTED** |

| | (statute of limitations) | (not a _de facto_ manager of Hopwood) | (not a _de facto_ manager) |
|---|---|---|---|
| **III   (direct) contract claim** (implied duty of good faith and fair dealing) | **SUMMARY JUDGMENT DENIED** | **SUMMARY JUDGMENT GRANTED** (no contractual duties identified that were exercised unreasonably) | **SUMMARY JUDGMENT GRANTED** (not a Hopwood member; no contractual duties) |
| **IV (derivative)** constructive trust | **PREVIOUSLY DISMISSED** | **PREVIOUSLY DISMISSED** | **PREVIOUSLY DISMISSED** |

### B.  Final Observations

In the Prior Memorandum, I described the gravamen of the Trustee's complaint as follows:

> Essentially, the Trustee alleges that McCauley and MALP engineered the foreclosure against the Property for their benefit and to the detriment of the Debtor, Hopwood and the bankruptcy estate. The Trustee also alleges that Mullaney actively colluded with McCauley or permitted the collusive foreclosure to occur through neglect. As a result of the alleged wrongful conduct, the Trustee asserts that the Debtor and Hopwood suffered substantial economic loss.

Marchese, 2018 WL 3472823, at *1.

It may seem counterintuitive that the causes of action against MALP and McCauley are dismissed while the claims against Mullaney survive summary judgment.  The facts developed by the Trustee tend to depict MALP and McCauley as the more culpable actors in the alleged scheme to strip Hopwood of its most valuable asset and destroy the Debtor's hopes for a profitable return on his investment.  By comparison, as depicted by the Trustee, Mullaney was

either a more passive co-conspirator (in order to free himself of personal liability on the outstanding loan owed by Hopwood) or merely incompetent and guilty of nonfeasance as the manager of Hopwood.

The outcome here largely is the result of policies embedded in Pennsylvania's prior LLC statute, the 1994 LLC Act (that for reasons explained in the Prior Memorandum, controls the substantive rights and obligations of the parties, see Marchese, 2018 WL 3472823, at *11).

In a manager-controlled LLC, the members only have the duties imposed by the operating agreement, whereas LLC managers have explicit, enhanced duties: not only the duties imposed by the operating agreement but also the statutory duties held by a director of a business corporation.  Significantly, the LLC statute also permits members "to engage in transactions with a limited liability company to the same extent as a person who is not a member or a manager of the company." 15 Pa. C.S. §8946(a) (repealed eff. Feb. 21, 2017).

Viewed through this prism, one might say that MALP and McCauley – who were not managers of Hopwood - were free to pursue the purchase of the Mortgage with the goal of foreclosing on Hopwood's valuable real estate, just as if they were any unconnected third party. The primary duty to protect Hopwood's interests rested with its manager, Mullaney.  From this narrow perspective, MALP and McCauley did nothing wrong while Mullaney may have breached his managerial obligations by failing to take action to protect Hopwood's interest (e.g., making a cash call on the members or defending the foreclosure).

That said, given the close relationship among MALP, McCauley, Mullaney, the Debtor, and Hopwood, there may have been viable theories of liability against MALP and McCauley for their actions.  I express no view regarding whether such legal theories truly exist or are meritorious. The Trustee chose to attack MALP and McCauley through theories involving entity governance.  For the reasons expressed in this Opinion, those causes of action are legally

insufficient.  Consequently, the Trustee may only proceed against Mullaney, Hopwood's manager.

Date: **June 24, 2019**

**ERIC L. FRANK**
**U.S. BANKRUPTCY JUDGE**